1407

Jacqueline Howell McDOWELL, Appellant v. Ronald Dean McDOWELL, Respondent.

(386 S. E. (2d) 468)

Court of Appeals

*John P. Ford* of *Bryan, Bahnmuller, King, Goldman & McElveen,* Sumter, *for appellant.*

*Hans F. Paul,* North Charleston, *for respondent.*

Heard Oct. 16, 1989.

Decided Oct. 30, 1989.

CURETON, Judge:

In this domestic action the wife appeals the portions of the order (1) granting the husband a divorce on the grounds of physical cruelty, (2) awarding the husband alimony, (3) equitably dividing the marital property, and (4) awarding attorney fees and costs to the husband. We affirm as modified.

Jacqueline and Ronald McDowell were married in 1983 and separated in 1986 after approximately two and one-half years of marriage. Both had been previously married. Six months after their separation Jacqueline McDowell shot Ronald McDowell when he came to her residence and tried to obtain a vehicle from her. Mr. McDowell was seriously injured and sustained permanent injuries. He has not been employed since the shooting.

Jacqueline McDowell filed for a divorce on the ground of one year continuous separation. Ronald McDowell counterclaimed for a divorce based upon physical cruelty. He also sought alimony, equitable division, and attorney fees. The family court granted Ronald McDowell a divorce on the ground of physical cruelty, awarded him alimony of $200 per month, equitably divided the marital assets and debts, and awarded him attorney fees. We address each item separately.

## PHYSICAL CRUELTY

Jacqueline McDowell argues the court erred in granting a divorce on the ground of physical cruelty. The court found the single act of violence was not provoked by Ronald McDowell and was totally out of proportion to his action of trying to recover the vehicle. The court found it was Mrs. McDowell's intention to do serious bodily harm to Mr. McDowell. Mrs. McDowell asserts the shooting was accidental and, in any event, provoked by Mr. McDowell.

Mr. McDowell and three other people came to Mrs. McDowell's residence at about ten o'clock at night. She was alone and did not have a telephone. She had not seen Mr. McDowell in almost six months. She testified a car without lights appeared several times in the road by her home and she was frightened because someone had tried to break in previously. She carried her pistol with her to answer the door. Mr. McDowell was present with his son. They had a discussion about the car. She testified Mr. McDowell was acting out of character but she did not see any weapons. He turned to leave after she refused to give him the car. He turned back to say something to her when he was about six feet away and she testified the gun went off accidentally. She did admit during testimony that she would have shot him if he had come within a certain distance of her.

A single assault by one spouse upon the other spouse can constitute physical cruelty. The assault must, however, be life threatening or must be either indicative of an intention to do serious bodily harm or of such a degree as to raise a reasonable apprehension of great bodily harm in the future. *Gibson v. Gibson*, 283 S. C. 318, 322 S. E. (2d) 680 (Ct. App. 1984). A divorce on the ground of physical cruelty will not be granted when the physical cruelty is provoked by the complaining spouse and the physical cruelty is not out of proportion to the provocation. *Id.* The family court heard the testimony and observed the witnesses. We find sufficient evidence in the record to support the findings and conclusions of the family court awarding the divorce on the ground of physical cruelty. The single assault was certainly life threatening and indicative of an intention to do serious bodily harm. Although the discussion between Mr. and Mrs. McDowell may have been heated the evidence does

not support the assertion Mr. McDowell provoked the shooting.

## ALIMONY

The family court awarded Mr. McDowell $200 per month in periodic alimony. The court found he had suffered serious and disabling injuries from the shooting. He had previously worked as a route salesman for Frito-Lay and had earned approximately $24,000 per year. Since the shooting he had not been employed. He cannot lift an object weighing over ten pounds and has intermittent low back pain. Mr. McDowell lost bladder and bowel control as a result of the shooting and was also rendered impotent.

Mrs. McDowell claims error in the award of alimony. She asserts she does not have the financial resources to pay the alimony and the award is not appropriate given the length of the marriage. She also disputes the finding of disability.

Mrs. McDowell's financial declaration shows a deficit when her income and expenses are compared. She is employed by the Postal Service at an annual salary of approximately $24,000. Mr. McDowell shows an income of $350 per month from rent of a house. Mr. McDowell testified he has applied for Social Security disability but has been turned down and is appealing. He has no disability income from his former employment. His monthly expenses include two mortgage payments, one of which was incurred in consolidating marital debts.

After a review of the record we affirm the award of alimony. Although the marriage was relatively short a consideration of the other factors relevant to an alimony award supports the decision of the court. *See Johnson v. Johnson,* 288 S. C. 270, 341 S. E. (2d) 811 (Ct. App. 1986) (factors in award of alimony). We specifically note the order of the court held McDowell was to provide a report on the status of his disability claim and Mrs. McDowell was granted leave to apply for a modification of the alimony order if he was successful in the application for benefits.

## EQUITABLE APPORTIONMENT

The marital property of the parties consisted of certain horses and equestrian equipment acquired during the mar-

riage. Mrs. McDowell assigns error to the valuation of certain horses, the inclusion of one horse in the marital estate, and the apportionment of the marital estate on a fifty-fifty basis.

Mrs. McDowell did not challenge the inclusion of five horses in the marital estate but disputed the court's valuation of the horses. Basically, she claims the horses were either sold for relatively low values or given away in exchange for their board fees. Mr. McDowell gave his opinion of the value of the horses. Mrs. McDowell asserts his values are not reliable because of his lack of expertise. No independent witness testimony was admitted into evidence. The values assigned by the trial court are either between the values assigned by the parties or coincide with the testimony of Mr. McDowell. The trial judge weighed the testimony and judged the credibility of the parties. The values assigned by the judge are within the values cited by the parties. We find no abuse of discretion after examining the record. *See Strickland v. Strickland,* 297 S. C. 248, 376 S. E. (2d) 268 (1989).

Mrs. McDowell asserts the court erred in including one horse, Slash Valentine, in the marital estate. She claims she owned this horse before the marriage and it was not transmuted into marital property as the court found. Both parties testified the horse was owned by Mrs. McDowell before the marriage. This horse was bred with another horse purchased by the parties. There is testimony from Mr. McDowell that both parties cared for the horse and marital funds were utilized to support this horse as well as the other horses acquired during the marriage.

Transmutation continues as a viable doctrine under the Equitable Apportionment of Marital Property Act. *Strickland v. Strickland,* 297 S. C. 248, 376 S. E. (2d) 268 (1989). Property which is nonmarital at the time of its acquisition may be transmuted into marital property (1) if it becomes so commingled with marital property as to be untraceable; (2) if it is titled jointly; or (3) if it is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties to make it marital property. *Johnson v. Johnson,* 296 S. C. 289, 372 S. E. (2d) 107 (Ct. App. 1988).

Mr. McDowell bears the burden of demonstrating the transmutation of this horse from nonmarital to marital property. The record contains little specific evidence regarding this matter. Certainly, the horse did not become commingled and untraceable. There is no evidence it was jointly titled. There is no evidence it was used in support of the marriage. The only evidence concerning the horse is that it was used for breeding purposes and its upkeep came from marital funds. On this record we find Mr. McDowell has failed to carry his burden of proving this horse was transmuted into marital property.

Mrs. McDowell also assigns error to the apportionment by the family court. She claims error in the fifty-fifty division. Primarily she claims Mr. McDowell had nonmarital assets which the court did not properly consider in its award. The marriage was relatively brief. The record seems to indicate the parties contributed roughly the same salary to the marriage. The court did not consider the home where they resided as part of the marital estate. While the record is not entirely clear it appears Mr. McDowell owned the home before the marriage. A second mortgage was placed on the home during the marriage to secure money to consolidate marital debts. There is some testimony about other personal property Mr. McDowell owns but no indication of its value. Upon review of the entire record we do not find any abuse of discretion by the family court in the apportionment of the marital estate on a fifty-fifty basis.

Under our review of the equitable apportionment we modify the indebtedness of Jacqueline McDowell to the sum of $2,200 as calculated in Paragraph 27 of the order. This modification represents a deduction from the marital assets of the value of the horse, Slash Valentine.

## ATTORNEY FEES

The family court awarded Mr. McDowell $1,200 in attorney fees and $314.17 in costs. Mrs. McDowell argues he is not entitled to the award and, in any event, it is excessive. Counsel for Mr. McDowell submitted an affidavit concerning fees and costs. The award does not fully compensate for fees incurred.

The award of attorney fees and costs is a matter within the sound discretion of the family court and the decision should not be overturned absent abuse of discretion by the family court. *Donahue v. Donahue*, 384 S. E. (2d) 741 (S. C. 1989). The court considered the relevant factors outlined in *Atkinson v. Atkinson*, 279 S. C. 454, 309 S. E. (2d) 14 (Ct. App. 1983). Upon our review of the record we find no abuse of discretion.

The decision of the family court is affirmed as modified.

SHAW and BELL, JJ., concur.