661 S.E.2d 130

**Amy Bailey THOMSON, Respondent**

v.

**Colin Andrew THOMSON, Appellant.**

**No. 4378.**

Court of Appeals of South Carolina.

Submitted March 3, 2008.

Decided April 25, 2008.

614

616

J. Benjamin Stevens, of Spartanburg, and John S. Nichols, of Columbia, for Appellant.

Richard H. Rhodes, of Spartanburg, for Respondent.

HEARN, C.J.:

Colin Thomson (Husband) appeals from the final order of the family court granting Amy Thomson (Wife) a divorce on the ground of physical cruelty and ordering him to pay: (1) $99 per week in child support; (2) one-half of accumulated marital debt; (3) thirty-six percent of the children's future uninsured medical bills; and (4) $5,000 toward Wife's attorneys' fees. Husband also appeals the court's declaration that Wife owned all the property in her possession. We affirm.[1]

## FACTS

In February 2004, Husband and Wife met on a dating website. Wife held a master's degree and worked as a college swim coach and teacher. She owned a furnished home in Spartanburg, South Carolina. Husband, a Canadian citizen, worked in furniture sales. Prior to their marriage, Wife agreed to sponsor Husband's application for a visa. After their August 2004 marriage, Husband moved into Wife's home. Wife worked two jobs; however, Husband delayed submitting his visa application until February 2005 and, consequently, remained unemployed until May 2005.

Shortly after their marriage, Wife became pregnant. Her pregnancy was considered "high-risk" because she was thirty-seven years old and expecting twins. The children were born six weeks prematurely and remained in the newborn intensive care unit for twelve days. After Wife returned to work, wife's mother Carrie Bailey, who had moved from Michigan to the home to help care for the children, remained in the home to provide child-care.

On August 18, 2005, Wife filed a complaint seeking: (1) a divorce on the ground of physical cruelty; (2) sole custody of the children; (3) equitable division of marital debt; (4) child support; and (5) attorneys' fees. While Wife and the children were attending a function at Wife's school, Husband vacated the home and removed numerous items of Wife's personal property. Based upon Wife's motion for emergency relief, wherein she claimed Husband had become "volatile and irra-

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

tional," the family court issued an ex parte order that mutually restrained Husband and Wife from interaction, temporarily restrained Husband from contact with the children, and granted Wife temporary custody.

At a subsequent hearing, the family court, finding Husband was not an immediate threat to the children or a flight risk, granted him unsupervised visitation. Further, the family court ordered Husband to pay child support of $133 per week, to return the personal property he removed from Wife's home, and it imposed a mutual restraining order.

Ultimately, the family court issued a final order granting Wife a divorce on the ground of physical cruelty, sole custody of the children, and $5,000 toward her attorneys' fees. Husband was awarded visitation within the United States, and was ordered to pay child support of $99 a week, in addition to thirty-six percent of the children's future medical bills that were not covered by insurance. The court also ordered Husband and Wife to divide their accumulated marital debt and the children's unpaid medical bills. Additionally, the court declared Wife owned all of the property in her possession as well as the property the court had previously ordered Husband return to her. Husband's appeal followed.

## STANDARD OF REVIEW

A divorce action is a matter in equity heard by the family court judge; on appeal, the court's scope of review extends to the finding of facts based on its own view of the preponderance of the evidence. *McLaughlin v. McLaughlin*, 283 S.C. 404, 405–06, 323 S.E.2d 781, 782 (1984). However, our broad scope of review does not require us to disregard the findings of the family court or to ignore the fact that the trial judge saw and heard the witnesses and was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Tinsley v. Tinsley*, 326 S.C. 374, 380, 483 S.E.2d 198, 201 (Ct.App.1997).

## LAW/ANALYSIS

### A. Physical Cruelty

Husband contends the family court erred in granting Wife a divorce on the ground of physical cruelty. We disagree.

 Physical cruelty is "actual personal violence, or such a course of physical treatment as endangers life, limb or health, and renders cohabitation unsafe." *Brown v. Brown*, 215 S.C. 502, 508, 56 S.E.2d 330, 333 (1949). In considering what acts constitute physical cruelty, the court must consider the circumstances of the particular case. *Gibson v. Gibson*, 283 S.C. 318, 322, 322 S.E.2d 680, 682 (Ct.App.1984).

In *Gibson*, the husband appealed a family court order denying him a divorce on the ground of physical cruelty after his intoxicated wife allegedly locked herself in the bedroom and shot a rifle into the closed door. The husband claimed a splinter from the door struck him in the face; however, his wife claimed he was in a different room when she fired the gun. *Id.* at 322, 322 S.E.2d at 682. The family court held that because the husband was not physically injured, the wife's conduct did not constitute physical cruelty. *Id.* at 322, 322 S.E.2d at 683.

Prior to *Gibson*, no South Carolina case directly addressed whether it was necessary for a spouse to prove bodily injury when seeking a divorce on the ground of physical cruelty. *Id.* at 323, 322 S.E.2d at 683. On appeal, the *Gibson* court conducted an extensive review of the applicable case law and held:

[I]f the wrongful act involves actual violence directed by one spouse at the other, "bodily injury" is not required in order to find "physical cruelty." A single assault by one spouse upon the other spouse, then, can constitute a basis for a divorce on the ground of physical cruelty; however, the assault must be life threatening or it must be either indicative of an intention to do serious bodily harm or of such a degree as to raise a reasonable apprehension of great bodily harm in the future.

*Id.* at 323, 322 S.E.2d at 683 (emphasis in original).

The *Gibson* court found that although the wife committed a single act of "actual violence" by firing the rifle, it was unclear whether her act was one of "actual *personal* violence" directed against Husband. *Id.* at 323–24, 322 S.E.2d at 683. The *Gibson* court remanded the case to the family court for findings regarding the credibility of the parties and the circumstances surrounding the wife's firing the gun. *Id.* at 324,

322 S.E.2d at 683–684. *See Lucas v. Lucas,* 279 S.C. 121, 302 S.E.2d 863 (1983) (finding it difficult to fathom the reason the family court did not grant wife a divorce on the grounds of physical cruelty, but finding no abuse of discretion in the court's decision to grant the divorce on the ground of one year's separation); *see also McDowell v. McDowell,* 300 S.C. 96, 99–100, 386 S.E.2d 468, 470 (Ct.App.1989) (affirming the family court's grant of a divorce to a husband on the ground of physical cruelty where the court found his wife's single act of "accidentally" shooting him was life threatening, indicative of her intention to do serious bodily harm, and totally out of proportion to his attempt to recover a vehicle from her).

Here, Wife testified Husband first physically abused her in February 2005, when she was pregnant with twins. Wife stated she and Husband argued over their finances, and she had gone into the bedroom to calm down when "he came in there and I mean basically pulled me off the bed three times by my legs." Husband, meanwhile, testified Wife kicked him as he tried to retrieve bills from under the bed, and he admitted he responded by pulling her off the bed by her legs. After this altercation, Husband and Wife separated briefly; however, Wife said Husband returned a week later, "against [her] wishes."

Wife also testified Husband "roughed her up" on her wrist and breast and shattered a glass picture on her stomach; however, the record does not indicate when these alleged acts of physical violence occurred. Husband admitted "[t]here was an incredible amount of physical violence in the house" and contended Wife physically abused him by throwing juice at him and punching him in the stomach. Wife admitted throwing juice at Husband after he told her he never wanted to marry her, but she denied ever hitting him.

█ Where issues relate to proof regarding which party, if either, is entitled to a divorce, and the evidence is in conflict and susceptible to different inferences, "it becomes the duty of the trial judge to determine not only the law of the case but the facts as well" because the judge observed the witnesses and could "attach[ ] to each one's testimony such credence as was due." *Anders v. Anders,* 285 S.C. 512, 514, 331 S.E.2d 340, 341 (1985). Here, the family court's final order noted its

"particular attention to the demeanor of the party [testifying] and the substance of that testimony" and stated concerns regarding the credibility of Husband's testimony and the testimony of Husband's only witness, his brother. By contrast, the court's order did not express concerns regarding Wife's credibility.

Given Wife's condition at the time of the alleged act of physical violence, Husband's acknowledgement that there was a great deal of physical violence in the home, and the fact that the family court judge had the opportunity to observe the demeanor of the parties, we find sufficient evidence in the record to support the family court's decision to grant Wife a divorce on the ground of physical cruelty.

### B. Condonation

Husband claims that even if his acts rose to the level of physical cruelty, the evidence shows Wife condoned his misconduct when she allowed him to move back into the marital residence. We disagree.

"Ordinarily condonation is an affirmative defense that must be pleaded." *McLaughlin v. McLaughlin*, 244 S.C. 265, 272, 136 S.E.2d 537, 540 (1964). However, the issue of condonation in a divorce proceeding may be raised for the first time on appeal. *Id.* But see *Doe v. Doe*, 286 S.C. 507, 511, 334 S.E.2d 829, 832 (Ct.App.1985) (suggesting *McLaughlin* "may have been superseded by the subsequent adoption of Family Court Rule 11 which expressly provides that 'recrimination and condonation shall be pleaded as affirmative defenses.'"); Rule 8(c), SCRCP (stating when pleading to a preceding pleading, a party must set forth the affirmative defense of condonation).

Here, Husband raises the affirmative defense of condonation for the first time on appeal. He acknowledges the family court's order does not address condonation, yet he asks this court to examine the record and find condonation. We decline to do so because this issue was neither pled nor raised to the family court judge.

## C. Child Support

■ Husband asserts the family court abused its discretion in ordering him to pay child support of $99 per week. Specifically, Husband contends the family court made no findings to support this award. We disagree.

■ When an order from the family court fails to make specific findings of fact in support of the court's decision, the appellate court may remand the matter to the family court or, "where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence." *Badeaux v. Davis,* 337 S.C. 195, 203, 522 S.E.2d 835, 839 (Ct.App. 1999). Additionally, the South Carolina Child Support Guidelines (Guidelines) allow a court to impute potential gross income to a parent who is unemployed or underemployed. *See* 27 S.C.Code Ann. Regs. § 114–4720 (Supp.2007).

While the family court's written order minimally complies with Rule 26(a), SCRCP, the record is sufficient for this court to make findings on this issue which support the family court order.[2] Husband testified he received a letter from the Immigration and Naturalization Service (INS) in November 2005, stating that because Wife had withdrawn her sponsorship of his visa application, he was no longer eligible to work in the United States, and must leave the country by April 22, 2006. The court's order found Husband planned to return to Halifax, where he had a job offer paying $13 per hour to work forty hours per week. Wife submitted a financial declaration showing gross monthly income of $3,916 and a monthly expense of $153 for the children's health insurance. Although the family court's order did not state that it had imputed income to Husband based on his testimony, or had applied the Guidelines, we find the record contained the facts needed for the court to compute Husband's child support obligation pursuant to the Guidelines.

Based on the record before us, we project monthly wages of $2,080 to Husband. Accordingly, the family court did not abuse its discretion by ordering Husband to pay $99 per week in child support.

---

2. Husband's testimony revealed the financial declarations he submitted to the family court were inaccurate.

## D. Equitable Division of Marital Debt

Husband argues the family court erred in finding marital debt of $36,560 and ordering Husband to pay one-half ($18,280) to Wife at a rate of $300 per month. Specifically, Husband argues Wife did not sufficiently document that the debt incurred during the marriage was related to expenses in support of the marriage. We disagree.

"For purposes of equitable distribution, 'marital debt' is debt incurred for the joint benefit of the parties regardless of whether the parties are legally jointly liable for the debt or whether one party is legally individually liable." *Hardy v. Hardy,* 311 S.C. 433, 436–37, 429 S.E.2d 811, 813 (Ct.App.1993) (emphasis in original). The same rules of fairness and equity that apply to the equitable distribution of marital property also apply to the equitable division of marital debts. *Id.* at 437, 429 S.E.2d at 814. "[T]he burden of proving a spouse's debt as nonmarital rests upon that party who makes such [an] assertion." *Id.* at 437, 429 S.E.2d at 814. It is a "rebuttable presumption that a debt of either spouse incurred prior to the beginning of marital litigation is a marital debt and must be factored in the totality of equitable apportionment." *Wooten v. Wooten,* 364 S.C. 532, 546, 615 S.E.2d 98, 105 (2005).

Wife testified she expected Husband to be unemployed during the ninety-day visa application process, and she had accepted a second job coaching three evenings a week to get them through this period. Husband testified he sold his assets before he left Canada and arrived in the United States with only a leased car, personal effects, and between $2,000 and $6,000. Husband agreed he was totally dependent on Wife during that time.

Husband did not begin working until May 2005, nine months after their marriage. Wife testified Husband did not contribute financially to their marriage, even after he began earning approximately $1,800 a month working at Ashley Furniture. She testified his only financial contribution to their marriage was $150.[3] Husband did not dispute Wife's trial testimony

---

3. Wife stated Husband gave her $150 to pay a bill after their marriage counselor told him to make a contribution to the marriage.

and agreed he had not paid any medical bills or contacted the children's health care providers to negotiate a payment plan. Additionally, Husband did not contradict Wife's testimony that she made monthly payments on Husband's outstanding Canadian debts, paid Husband's INS application fee of $1,000, paid his speeding tickets, and gave him money to open a checking account. Husband stated they dined frequently at restaurants, took short vacations together, and purchased nursery furniture. Husband also testified he "spent many nights in motels just trying to get away...."

Wife presented documentation showing her credit card debt had increased from $4,500 at the time she married Husband to $36,560 when they separated a year later. Wife testified her savings of $8,500 were depleted by paying bills related to their household expenses. Wife additionally testified they borrowed $4,500 from her mother and $5,460 from her aunt to pay their bills. Husband testified he was aware of these loans. At trial, Wife presented a summary showing $36,560 in marital debt, exclusive of unpaid medical bills. Wife introduced this summary into evidence without objection. Husband did not challenge Wife's statement of marital debt at trial.

Accordingly, we find the family court did not abuse its discretion in adopting Wife's summary of $36,560 in marital debt, and ordering Husband and Wife to evenly divide the debt with Husband paying $300 per month to Wife until his $18,280 obligation is satisfied. *See Honea v. Honea*, 292 S.C. 456, 458, 357 S.E.2d 191, 192 (Ct.App.1987) ("The trial court's findings come to us with a presumption of correctness. The burden is on [Appellant] to demonstrate the family court committed reversible error.... [A] party cannot sit back at trial without offering proof, then come to this Court complaining of the insufficiency of the evidence to support the family court's findings.").

## E. Equitable Division of the Marital Estate

Husband argues the family court failed to properly apportion the marital estate. We disagree.

Section 20–7–473 of the South Carolina Code (Supp.2007) defines marital property as "all real and personal property

which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation." However, the statute specifically excludes from marital property, "property acquired by either party before the marriage," and states "[t]he court does not have jurisdiction or authority to apportion nonmarital property." *Id.*

"Family court judges have wide discretion in determining how marital property is to be distributed. They may use any reasonable means to divide the property equitably, and their judgment will not be disturbed absent an abuse of discretion." *Murphy v. Murphy,* 319 S.C. 324, 329, 461 S.E.2d 39, 41–42 (1995). Property which is nonmarital at the time of its acquisition may be transmuted into marital property "(1) if it becomes so commingled with marital property as to be untraceable; (2) if it is titled jointly; or (3) if it is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties to make it marital property." *Johnson v. Johnson,* 296 S.C. 289, 295, 372 S.E.2d 107, 110 (Ct.App.1988).

Wife testified she owned her Spartanburg home and its furnishings prior to her marriage. She testified no marital property was acquired during the marriage. Husband did not challenge Wife's testimony. The record contains no facts to support transmutation of Wife's separate property into marital property. Moreover, Husband did not offer evidence showing any marital property was acquired. Accordingly, the family court did not abuse its discretion in declaring the property in Wife's possession, including the home she purchased prior to her marriage, to be nonmarital property.

## F. Children's Future Medical Bills

Husband contends the family court erred in ordering him to pay thirty-six percent of the children's future medical bills that are not covered by health insurance. While Husband does not dispute the court's authority to determine a parent's contribution towards medical costs, he contends "the figure of 36% appears from thin air." We disagree.

As stated above, based upon testimony concerning his prospective employment in Canada, we projected monthly gross

income to him of $2,080. Wife's gross monthly income is $3,916, from which $153 a month is deducted for the children's health insurance. As a result, Husband's imputed income of $2,080 comprises thirty-six percent of the $5,843 total monthly gross income available to Husband and Wife. Accordingly, we find the family court properly determined Husband's share of the children's future uninsured medical bills.

## G. Attorneys' Fees.

Husband contends the family court erred in ordering Husband to pay $5,000 towards Wife's attorneys' fees. We disagree.

An award of attorneys' fees will not be overturned absent an abuse of discretion. *Stevenson v. Stevenson,* 295 S.C. 412, 415, 368 S.E.2d 901, 903 (1988). "In deciding whether to award attorneys' fees, the family court should consider the parties' ability to pay their own fee, the beneficial results obtained by counsel, the respective financial conditions of the parties, and the effect of the fee on each party's standard of living." *Arnal v. Arnal,* 363 S.C. 268, 290, 609 S.E.2d 821, 833 (Ct.App.2005), *aff'd as modified,* 371 S.C. 10, 636 S.E.2d 864 (2006). When the family court finds an award of attorneys' fees is justified, the amount of fees should be determined by considering: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) counsel's professional standing; (4) the contingency of compensation; (5) the beneficial results obtained; and (6) the customary legal fees for similar services. *Glasscock v. Glasscock,* 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

Wife's attorney submitted a fee affidavit documenting fees of $8,481 in this action. Based on the beneficial results obtained by Wife and the time necessarily devoted to the case, we find no abuse of discretion in the court's decision to order Husband to pay $5,000 toward Wife's attorneys' fees. Accordingly, the order of the family court is

**AFFIRMED.**

KITTREDGE and THOMAS, JJ., concur.