THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 Stella K.
 Black, Appellant,
 
 
 
 
 

v.

 
 
 
 
 Harold Whitney
 Black, Respondent.
 
 

Appeal from Richland County
James F. Fraley, Jr., Family Court Judge

Unpublished Opinion No.  2010-UP-196
 Heard September 1, 2009  Filed March 8,
2010

AFFIRMED

 
 
 
 Jan Warner, of Columbia, for Appellant.
 Kermit King, Mary Katherine Sherman, Rebecca West, and Tina
 Cundari, all of Columbia, for Respondent.
 
 
 

PER CURIAM: In this appeal of a divorce decree,  Stella Black
 (Wife) alleges error in the family court's decisions regarding findings of
 fact, alimony, transmutation, valuation of assets, attorney's fees, marital
 fault, life insurance, and the disqualification of Harold Whitney Black's
 (Husband's) attorney.  We affirm.  
FACTS
Husband and Wife were married
 on January 6, 1994.  Each had been married before, and neither had children
 from their respective prior marriages, nor were any children born of this
 marriage.  
In 1972, Husband incorporated
 Whit-Ash Furnishings, Inc., a retail business selling furniture and home
 accessories in which he is a 51% shareholder.  Husband also owns 49% of The
 Burton Agency, LLP, which owns real estate, some of which is rented to Whit-Ash.  
Wife alleges that between the
 fall of 1991 and the parties' marriage in 1994, she performed a number of
 services that purportedly resulted in economic benefits to Husband and his
 interests in Whit-Ash and Burton.  After their marriage, Wife maintains she
 initiated jewelry and gift sales at Whit-Ash, handled television and other
 advertising, engaged in community activities, and did buying for the business. 
 Husband contends Wife did not have a position in the business, performed no
 day-to-day responsibilities, went to the store only sporadically, and when
 occasionally travelling with other Whit-Ash employees to jewelry markets, would
 buy items for herself instead of the store.  
In 2003, Wife embarked on a
 career in the music business.  According to Wife, Husband funded her efforts,
 deducted the losses on the parties' personal income tax returns, and had
 attorney Rebecca West, who had been his and Whit-Ash's personal attorney,
 assist with her endeavors.  In addition, with Husband's consent, other Whit-Ash
 employees assisted Wife with computer work, travel arrangements, and other
 tasks associated with her pursuit of a music career.
In 2001, discord in the
 marriage began to escalate and Husband temporarily left the marital residence. 
 Upon his return, Wife allegedly became more verbally abusive toward him and in
 October 2005, the parties had a physical altercation, after which Husband left
 the marital residence permanently.  
On January 17, 2006, Wife
 commenced this action, seeking separate maintenance and support, including
 security for support, equitable division, a finding that certain assets Husband
 acquired before the marriage had been transmuted or that Wife was entitled to a
 special equity in them, and attorney's fees and costs.  Husband denied Wife's
 allegations and counterclaimed for a divorce on the ground of adultery and a
 bar to Wife receiving alimony.  
The family court issued a
 temporary order on May 30, 2006, (1) finding Husband had not established a
 prima facie case of adultery; (2) awarding Wife temporary alimony of $9,000 per
 month and exclusive possession of the marital home; and (3) ordering Husband to
 maintain health coverage for Wife, pay the mortgage, taxes, and insurance on
 the marital home, and advance $30,000 as Wife's suit money and temporary
 attorney's fees.  
During the pendency of this
 action, Wife sought unsuccessfully to disqualify attorney Rebecca West from
 appearing on Husband's behalf on the ground that West had previously
 represented her when she attempted to establish herself in the music business.   
In the final decree, filed
 March 4, 2008, the family court granted Wife a divorce on the ground of a
 one-year's continuous separation, finding neither party was entitled to a
 divorce based on fault grounds.  In addition, the family court awarded Wife
 permanent alimony of $5,500 per month and required Husband to secure this award
 with $1.5 million dollars in life insurance.  Furthermore, the family court
 declined to find that Husband's interests in both Whit-Ash and Burton had been
 transmuted into marital property or that Wife was entitled to a special equity
 in either asset.  Wife received the marital residence subject to the mortgage
 on the property and was directed to pay Husband $41,000 at the rate of $1,000
 per month from her alimony.  Wife also received an additional $45,000 in
 attorney's fees and costs.  
Both parties filed post-trial
 motions.  In response to the motions, the court amended its order to reflect
 Wife's correct date of birth.  The court also reduced the amount of life
 insurance Husband was to carry to secure his alimony obligation from $1.5
 million to $750,000.  On March 31, 2008, Wife filed a notice of appeal.[1]
STANDARD OF REVIEW
"A divorce action is a
 matter in equity heard by the family court judge; on appeal, the court's scope
 of review extends to the finding of facts based on its own view of the
 preponderance of the evidence." Thomson v. Thomson, 377 S.C. 613,
 619,  661 S.E.2d 130, 133 (Ct. App. 2008) (citing McLaughlin v. McLaughlin,
 283 S.C. 404, 405-06, 323 S.E.2d 781, 782 (1984)).  "However, our broad
 scope of review does not require us to disregard the findings of the family
 court or to ignore the fact that the trial judge saw and heard the witnesses
 and was in a better position to evaluate their credibility and assign
 comparative weight to their testimony."  Id. (citing Tinsley v.
 Tinsley, 326 S.C. 374, 380, 483 S.E.2d 198, 201 (Ct. App. 1997)).
LAW/ANALYSIS
1. Wife
 argues the family court's finding of facts are in error because the court
 failed to give due consideration to Husband's alleged marital fault and lack of
 credibility.  We disagree.
Citing McCrosson v. Tanenbaum, 375 S.C. 225,
 652 S.E.2d 73 (Ct. App. 2007), Wife argues the family court improperly ignored
 or discounted evidence that Husband, with the assistance of others in the case
 wove a "web of deceit" and "engaged in a campaign of egregious
 concealment, complication, and out and out lying in an effort to attempt to
 obtain a financial advantage in this case."  "However, our broad
 scope of review does not require us to disregard the findings of the family
 court or to ignore the fact that the trial judge saw and heard the witnesses
 and was in a better position to evaluate their credibility and assign
 comparative weight to their testimony."  Thomson, 377 S.C. at 619,
 661 S.E.2d at 133.  We believe the supreme court's express discrediting of this
 court's statement in McCrosson about a reviewing court's advantage in an
 emotionally charged trial is in itself sufficient reason to defer to the family
 court; however, we also agree with Husband that any misconduct on his part
 during the litigation pales in comparison with that in McCrosson.  See McCrosson v. Tanenbaum, 383 S.C. 150, 151, 679 S.E.2d 172, 172 (2009)
 (explaining the court of appeals' decision "improperly implie[d] that the
 family court was 'distracted by an emotionally charged trial' "). 
 Accordingly, we find no error on the part of the family court.
2. Wife
 argues the family court erred in awarding Wife permanent alimony of only $5,500
 per month.  We disagree.
"An award of alimony
 rests within the sound discretion of family court and will not be disturbed
 absent an abuse of discretion."  Craig v. Craig, 365 S.C. 285, 292,
 617 S.E.2d 359, 362 (2005).  "Generally, alimony should place the
 supported spouse, as nearly as practical, in the same position as enjoyed
 during the marriage."  Id.
The legislature has set forth
 twelve factors for a family court to consider in determining an alimony award. 
 These factors include duration of the marriage, the physical and emotional
 health of the parties, the parties' education, their work experience and
 earning potentials, the standard of living established during the marriage,
 current and reasonably anticipated expenses, marital and nonmarital properties
 of the parties, and marital misconduct or fault.  S.C. Code Ann. § 20-3-130(C)
 (Supp. 2009).  
As the family court properly
 addressed the statutory alimony factors, we defer to the discretion of the
 family court and find no error with the alimony award.  
3. Wife
 argues the family court erred in declining to find Husband's interests in
 Whit-Ash and Burton were transmuted into marital property or, in the
 alternative, that she was entitled to special equity interests in these
 assets.  We disagree.
Marital property is defined as "all real and
 personal property which has been acquired by the parties during the marriage
 and which is owned as of the date of filing or commencement of marital
 litigation."  S.C. Code Ann. § 20-3-630 (Supp. 2009).  Excluded from
 marital property is "property acquired by either party before the
 marriage."  Id.  Non-marital property can be considered to have
 transmuted into marital property " '(1) if it becomes so commingled with
 marital property as to be untraceable; (2) if it is titled jointly; or (3) if
 it is utilized by the parties in support of the marriage or in some other
 manner so as to evidence an intent by the parties to make it marital
 property."  Thomson, 377 S.C. at 620, 661 S.E.2d at 133 (quoting Johnson
 v. Johnson, 296 S.C. 289, 295, 372 S.E.2d 107, 110 (Ct. App. 1998). 
 "The burden is on the spouse claiming transmutation to produce objective
 evidence that the parties considered the property to be marital during the
 marriage."  Pirri v. Pirri, 369 S.C. 258, 270, 631 S.E.2d 279, 286
 (Ct. App. 2006).  Evidence of transmutation may include placing the property in
 joint names, transferring the property to the other spouse as a gift, using
 the  property exclusively for marital purposes, commingling the property with
 marital property, using marital funds to build equity in the property, or
 exchanging the property for marital property.  Johnson, 296 S.C. at 295,
 372 S.E.2d at 110-11.  Mere use of the income from a spouse's separate property
 in support of the marriage does not transmute the property into a marital
 asset.  Pirri, 369 S.C. at 270, 631 S.E.2d at 286.
Upon review of the record we find the evidence
 supports the family court's ruling that the non-marital property did not
 transmute.  Accordingly, we affirm the ruling of the family court.
4. Wife
 argues the family court erred in its valuation of Husband's interests in
 Whit-Ash and Burton.  We disagree.
A family court may accept
 the valuation of one party over another, and the courts valuation of marital
 property will be affirmed if it is within the range of evidence presented.  Pirri,
 at 264, 631 S.E.2d at 283.  We find the family court's valuation to be within
 the range of evidence presented.  
Moreover, we are inclined to
 agree with Husband that, inasmuch as Wife has not argued that the family
 court's allegedly erroneous valuations of the businesses led to other errors,
 this issue is of no consequence.  See Miles v. Miles, 303 S.C.
 33, 36, 397 S.E.2d 790, 792 (Ct. App. 1990) (recognizing an overriding rule
 that "whatever doesn't make a difference, doesn't matter").
5. Wife
 argues she should have received a larger award of attorney's fees and costs. 
 We disagree.
The family court may award
 reasonable attorney's fees and costs based on "the financial resources and
 marital fault of both parties."  S.C. Code Ann. § 20-3-130(H) (Supp.
 2009).  
Attorney's fees awards are
 within the family court's discretion.  Upchurch v. Upchurch, 367 S.C.
 16, 28, 624 S.E.2d 643, 648 (2008).  "In determining the reasonable amount
 of attorneys fees to award, the court should consider the nature, extent, and
 difficulty of the services rendered, the time necessarily devoted to the case,
 counsel's professional standing, the contingency of compensation, the
 beneficial results obtained, and customary fees for similar services."  Roberson
 v. Roberson, 359 S.C. 384, 392, 597 S.E.2d 840, 844 (Ct. App. 2004).  Here
 we find the family court's award of attorney's fees to be within its
 discretion.  
6. Wife
 argues she is entitled to a divorce based on the ground of desertion.  We
 disagree.
A spouse seeking a divorce on
 the ground of desertion must show "(1) cessation from cohabitation for . .
 . one year; (2) intent on the part of the absenting party not to resume it; (3)
 absence of the opposing party's consent; and (4) absence of justification."
  Fort v. Fort, 270 S.C. 255, 259, 241 S.E.2d 891, 893 (1978). 
 "Where the departing spouse has just cause for leaving, her doing so does
 not constitute desertion."  Smith v. Smith, 260 S.C. 65, 67, 194
 S.E.2d 199 (1973). 
We find the facts support the
 family court's refusal to award a divorce on the grounds of desertion.  
7. Wife
 argues the family court erred in reducing the amount of life insurance that
 Husband was to maintain to secure his alimony obligation.  We disagree.
Under section 20-3-130(D) of
 the South Carolina Code (Supp. 2008), the family court "may make provision
 for security for the payment" of spousal support, and, in conjunction with
 this provision, may direct a supporting spouse "to carry and maintain life
 insurance so as to assure support of a spouse beyond the death of the payor
 spouse."  In this regard, there must be some evidentiary basis to support
 the amount of coverage ordered; however, this may be in response to an appeal
 by the payor spouse.  See, e.g., Zangari v. Cunningham, 839 So.
 2d 918, 919 (Fla. Ct. App. 2003) (citing cases referencing a requirement that
 the amount of life insurance coverage required bear some correlation to the
 projected alimony amounts).  Other recent out-of-state authority holds the
 amount of life insurance ordered to secure an alimony obligation is
 discretionary with the court.  See e.g., Braun v. Braun, 907
 N.E.2d 681 (Mass. App. Ct. 2009) (wherein after noting an order requiring the
 payor spouse to maintain life insurance was discretionary, the court further
 held:  "It follows that the amount of such insurance also rests in the
 discretion of the judge.")
Here, we find the family
 court was within its discretion to reduce the amount of life insurance Husband
 was required to maintain.  
8. Wife
 argues the family court should have granted her motion to disqualify attorney
 Rebecca West from representing Husband in this matter.  We disagree.
The comments to the South
 Carolina Rules of Professional Conduct provide: "After termination of a
 client-lawyer relationship, a lawyer has certain continuing duties with respect
 to confidentiality . . . and thus may not represent another client except in
 conformity with [the Rules.]"  Rule 407, SCACR, Rule 1.9 n. 1 (2009). 
In this case, the family
 court determined West obtained no confidential information through her
 representation of Wife, and because Wife communicated no "substantial
 information" and because such information was communicated through third
 parties or involved interactions between Wife and third parties, such
 information was not entitled to attorney-client privilege.[2] 
 Notwithstanding that Wife fails to substantiate what legal remedy, if any, is
 afforded her by the Rules of Professional Conduct on appeal; we find the record
 supports the family court's finding that West gained no confidential or
 "substantial information" during the course of her limited
 representation of Wife.  Furthermore, we find it compelling to note, as did the
 family court, that the information creating the alleged conflict could have
 been obtained from other sources, such as the Wife's affidavit and the
 Temporary Order, all of which were filed before West was a named counsel for
 Husband.  For these reasons Wife has failed to demonstrate any prejudice, and
 we therefore affirm the ruling of the family court.  See Davis v.
 Davis, 372 S.C. 64, 86, 641 S.E.2d 446, 458 (Ct. App. 2006) (stating that
 this court will not reverse the family court unless the error is material and
 prejudicial to the substantial rights of the appellant).
CONCLUSION
For the aforementioned reasons, the ruling of the
 trial court is
AFFIRMED. 
HUFF, THOMAS, and PIEPER, JJ., concur.

[1]  Wife also filed an unsuccessful petition for a writ
 of supersedeas with this Court to reinstate the temporary alimony award.  
[2]   We recognize that the family court also found that
 even had the attorney-client privilege arisen, Wife implicitly waived any
 objection of West's representation of Husband.  While we need not decide
 whether Wife's affirmative act of placing her earning potential in question,
 for the purposes of alimony calculation, constitutes a waiver of privilege, we
 do find that without West possessing any confidential information, the record
 in this matter and the jurisprudence of this state support the family court's
 indication that Wife's delay of over one year from the time West became
 Husband's counsel, over ten months from the date of the deposition in which
 Wife protested West's presence, and over nine months after Wife's attorney
 served West with the Notice of Appearance, waived any objection to West's
 representation of Husband.  See   Bakala v. Bakala, 352 S.C. 612,
 623, 576 S.E.2d 156, 162 (2003) (noting that when a party becomes aware of ex
 parte communication he must make a timely objection or such objection shall be
 deemed waived); Swenton v. Swenton, 336 S.C. 472, 486, 520 S.E.2d 330,
 338 (Ct. App. 1999) (finding that a party has waived an objection to
 arbitration by participating without objection); Patterson v. Patterson,
 288 S.C. 282, 284-85, 341 S.E.2d 819, 820 (Ct. App. 1986) (recognizing that a
 party may implicitly waive objection to a judge's failure to recuse himself by
 proceeding with trial without objection when the fact(s) allegedly mandating
 recusal is known).