693 S.E.2d 419

**Leah GORECKI, Respondent,**

v.

**Jeffrey Anthony GORECKI, Appellant.**

**No. 4669.**

Court of Appeals of South Carolina.

Heard Feb. 10, 2010.

Decided April 5, 2010.

Rehearing Denied June 4, 2010.

628

630

C. Lance Sheek, of Greenwood, for Appellant.

LaDonna Sargent Johnson, of Greenwood, for Respondent.

WILLIAMS, J.

In this appeal, Jeffrey Gorecki (Husband) contends the family court erred in (1) awarding Leah Gorecki (Wife) a divorce on the grounds of physical cruelty while denying Husband a divorce on the grounds of adultery; (2) awarding Wife 40% of the marital residence; (3) awarding Wife permanent periodic alimony; and (4) granting Wife attorneys' fees and costs. We affirm.

## FACTS

Husband and Wife married on November 20, 1975. They had three children during the course of their marriage, all of whom were emancipated before the parties' separation in September 2005. At the time of the hearing, Wife worked with mentally disabled children at a middle school, and Husband worked at Cooper Power Systems where he was earning approximately $51,000 per year.

Shortly after the parties separated, Wife filed for divorce on the ground of physical cruelty, seeking spousal and child support, equitable division of the marital estate, and attorneys' fees. Husband counterclaimed, seeking a divorce based on adultery and requesting custody[1] of their granddaughter, equitable division of the marital estate, and attorneys' fees.

---

1. The child custody issued was resolved prior to the final hearing.

At the final hearing on October 2 and 3, 2006, Wife testified to several instances of physical abuse in support of her claim that Husband was physically abusive. In response to Wife's allegations of abuse, Husband claimed Wife had previously engaged in an extramarital affair.[2] After hearing testimony from both parties and their respective witnesses, the family court issued an order on November 9, 2006, awarding Wife a divorce on the grounds of physical cruelty. The family court granted Wife $1,000 per month in permanent periodic alimony, divided the Husband's pension and 401(k) on a 50/50 basis, and split the marital residence on a 60/40 basis in favor of Husband. The family court also required Husband to pay $8,038.65 in Wife's attorneys' fees and costs. This appeal followed.

## STANDARD OF REVIEW

On appeal from a family court order, this court has authority to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence. *E.D.M. v. T.A.M.*, 307 S.C. 471, 473, 415 S.E.2d 812, 814 (1992). When reviewing decisions of the family court, we are cognizant of the fact the family court had the opportunity to see the witnesses, hear "the testimony delivered from the stand, and had the benefit of that personal observance of and contact with the parties which is of peculiar value in arriving at a correct result in a case of this character." *DuBose v. DuBose*, 259 S.C. 418, 423, 192 S.E.2d 329, 331 (1972) (internal citation and quotations omitted).

## LAW/ANALYSIS

### 1. Grounds for Divorce

Husband contends the family court erred in awarding Wife a divorce based on physical cruelty when he presented evidence entitling him to a divorce based on Wife's adultery. We disagree.

---

**2.** Husband also claimed Wife engaged in two other extramarital affairs but conceded they reconciled after both of those alleged affairs occurred.

 Physical cruelty is "actual personal violence, or such a course of physical treatment as endangers life, limb or health, and renders cohabitation unsafe." *Brown v. Brown,* 215 S.C. 502, 508, 56 S.E.2d 330, 333 (1949). In considering what acts constitute physical cruelty, the family court must consider the circumstances of the particular case. *Gibson v. Gibson,* 283 S.C. 318, 322, 322 S.E.2d 680, 682 (Ct.App.1984). A single assault by one spouse upon the other spouse can amount to physical cruelty. *McDowell v. McDowell,* 300 S.C. 96, 99, 386 S.E.2d 468, 469 (Ct.App.1989). The assault must, however, be life-threatening or must be either indicative of an intention to do serious bodily harm or of such a degree as to raise a reasonable apprehension of great bodily harm in the future. *Gibson,* 283 S.C. at 323, 322 S.E.2d at 683. The party alleging physical cruelty has the burden of proving it by a preponderance of the evidence. *Wood v. Wood,* 269 S.C. 600, 605, 239 S.E.2d 315, 317 (1977). A "preponderance of the evidence" is evidence which convinces as to its truth. *DuBose,* 259 S.C. at 424, 192 S.E.2d at 331.

 Similarly, proof of adultery must be "clear and positive and the infidelity must be established by a clear preponderance of the evidence." *McLaurin v. McLaurin,* 294 S.C. 132, 133, 363 S.E.2d 110, 111 (Ct.App.1987) (internal citation and quotations omitted). Because of the "clandestine nature" of adultery, obtaining evidence of the commission of the act by the testimony of eyewitnesses is rarely possible, so direct evidence is not necessary to establish the charge. *Fulton v. Fulton,* 293 S.C. 146, 147, 359 S.E.2d 88, 88 (Ct.App. 1987). Accordingly, adultery may be proven by circumstantial evidence; however, evidence placing a spouse and a third party together on several occasions, without more, does not warrant a finding of adultery. *Hartley v. Hartley,* 292 S.C. 245, 246–47, 355 S.E.2d 869, 871 (Ct.App.1987).

 Generally, "proof [of adultery] must be sufficiently definite to identify the time and place of the offense and the circumstances under which it was committed." *Loftis v. Loftis,* 284 S.C. 216, 218, 325 S.E.2d 73, 74 (Ct.App.1985). Furthermore, when issues relate to proof regarding which party, if either, is entitled to a divorce, and the evidence is conflicting and susceptible of different inferences, it becomes the family

court's duty to determine not only the law of the case but the facts as well because the family court observed the witnesses and could determine how much credence to give each witness's testimony. *Anders v. Anders,* 285 S.C. 512, 514, 331 S.E.2d 340, 341 (1985).

In this case, Wife testified to many instances of physical abuse at the hands of Husband over the course of their marriage. She stated Husband slapped her, pushed her into a wall, and knocked her to the ground while they lived in Michigan in the 1980s. Wife also claimed Husband continued to abuse her when they were living in South Carolina, including instances of Husband hitting, shoving, slapping, and cursing at her, which resulted in Wife calling police several times and being hospitalized on one occasion. At least one of these episodes was documented by a police incident report and photographs of Wife's bruises. The parties' eldest daughter corroborated Wife's account of Husband's abuse at the hearing. In contrast to her older sister, the parties' youngest daughter stated that while her parents argued, she never witnessed Husband physically abuse Wife, and to her knowledge, he had never hit or pushed Wife.

According to Wife, although she and Husband had separated numerous times over the course of their thirty-one-year marriage, she finally decided to leave Husband in September 2005 after he shoved her into a wall, verbally abused her and their grandchild, and then broke her phone when she tried to call for help. Wife testified she was in serious fear of bodily harm as a result of this incident, and even when he was not abusing her, she felt constantly threatened and under his control.

We find the September 2005 assault sufficient to grant Wife a divorce based on physical cruelty. *See McDowell,* 300 S.C. at 99, 386 S.E.2d at 469 ("A single assault by one spouse upon the other spouse can constitute physical cruelty ... [if it is] life threatening or ... indicative of an intention to do seriously bodily harm or of such a degree as to raise a reasonable apprehension of great bodily harm in the future."). In any event, the numerous instances of abuse, culminating in the September 2005 assault, indicate Husband's intent to seriously harm Wife, which warrants a divorce based

on physical cruelty. *See Brown,* 215 S.C. at 508, 56 S.E.2d at 333 ("Continued acts of personal violence producing physical pain or bodily injury and a fear of future danger are recognized as sufficient cause for a divorce for cruelty in nearly all jurisdictions ..."). The testimony elicited at the final hearing proved that Husband's repeated cycle of abusive behavior over the course of their marriage caused Wife to reasonably fear for her safety. *See Gibson,* 283 S.C. at 323, 322 S.E.2d at 683 (stating an assault not resulting in actual bodily injury may constitute physical cruelty when it causes reasonable fear of serious danger or bodily harm in the future). Moreover, the family court specifically found Wife's testimony and that of her witnesses to be more credible than that of Husband and his witnesses. Based on the testimony and evidence presented at the final hearing, we discern no error in the family court's decision to grant Wife a divorce on the grounds of physical cruelty. *See Tinsley v. Tinsley,* 326 S.C. 374, 380, 483 S.E.2d 198, 201 (Ct.App.1997) (finding the determination of whether conduct falls within the meaning of physical cruelty is governed by the particular circumstances of each case).

██ Regarding Husband's contention that the family court erred in failing to grant him a divorce on the grounds of adultery, we find Husband's proof of adultery was insufficient.

In support of his claim, Husband called their son's ex-girlfriend, Nikki Hastings (Nikki), to testify at the hearing. Nikki stated she engaged in sexual relations with Wife on several occasions after Wife revealed she had romantic feelings for her. When questioned by Wife's counsel, Nikki denied spreading rumors about sexual encounters she claimed to have had with other women in the community.

Wife denied these allegations and stated Nikki had fabricated this story when Wife and Husband told Nikki that she would have to move out of their residence after Wife caught Nikki viewing pornographic websites. Wife's half-sister testified on behalf of Wife and stated she was certain Wife had never engaged in any homosexual relationships. Susan Mohr, a mutual friend of Husband and Wife, stated Nikki had lied about other sexual relationships with women in the past. Another witness, Hope Jonda, testified her family had allowed Nikki to live with them for a period of time after Nikki was

kicked out of her home. Hope stated her mother had to ask Nikki to move out because her mother could not handle Nikki due to Nikki's emotional and behavioral issues. Nikki then began to tell others that Hope and she were engaged in a homosexual relationship, which was untrue.

Husband stated Nikki approached him about her adulterous relationship with Wife, but besides Nikki's testimony, Husband introduced no corroborating evidence to substantiate his claim that Wife had an extramarital affair. Further, Husband set forth no testimony, either direct or circumstantial, identifying the time, place, or circumstances of Wife's alleged adulterous acts. *See Brown v. Brown,* 379 S.C. 271, 278, 665 S.E.2d 174, 178 (Ct.App.2008) (finding proof of adultery must be "sufficiently definite to identify the time and place of the offense and the circumstances under which it was committed"). Wife denied any desire to engage in a homosexual relationship, and Nikki identified only one specific occasion—the night of her 18th birthday at the Gorecki's home—where she and Wife had the opportunity to commit adultery. When Nikki testified to this sexual encounter, she provided no details. Nikki vaguely stated that it occurred between three to five more times before their relationship terminated but failed to identify the time, place, or circumstances surrounding these other alleged interactions. *Id.* (stating adultery may be proven by circumstantial evidence, but the evidence must be sufficiently definite to establish both a disposition to commit the offense and the opportunity to do so).

Importantly, the family court found Husband and his witnesses' testimony to be less credible than that of Wife, which merits our deference based on the family court's ability to observe witnesses and assess their credibility. *See Anders,* 285 S.C. at 514, 331 S.E.2d at 341 (stating that when issues relate to proof regarding which party, if either, is entitled to a divorce, and the evidence is conflicting and susceptible of different inferences, it becomes the family court's duty to determine not only the law of the case but the facts as well because the family court observed the witnesses and could determine how much credence to give each witness's testimony). Accordingly, the family court properly denied Husband a divorce on the grounds of adultery.

## 2. Marital Estate

Husband claims the family court erred in awarding him only 60% of the value of the marital residence because Husband paid off a portion of the home with his inheritance. We disagree.

Marital property includes all real and personal property the parties acquired during the marriage and owned as of the date of filing or commencement of marital litigation. S.C.Code Ann. § 20–3–630(A) (Supp.2009) (formerly S.C.Code Ann. § 20–7–473(A) (Supp.2007)). The ultimate goal of apportionment is to divide the marital estate, as a whole, in a manner which fairly reflects each spouse's contribution to the economic partnership. *Johnson v. Johnson,* 296 S.C. 289, 298, 372 S.E.2d 107, 112 (Ct.App.1988). "Upon dissolution of the marriage, property acquired during the marriage should be divided and distributed in a manner which fairly reflects each spouse's contribution to its acquisition, regardless of which spouse holds legal title." *Id.* at 293, 372 S.E.2d at 109. The division of marital property is within the family court's sound discretion and will not be disturbed on appeal absent an abuse of that discretion. *Craig v. Craig,* 365 S.C. 285, 290, 617 S.E.2d 359, 361 (2005). The appellate court looks to the overall fairness of the apportionment. *Deidun v. Deidun,* 362 S.C. 47, 58, 606 S.E.2d 489, 495 (Ct.App.2004).

The family court's division of the marital home was proper. The parties purchased the mobile home at issue in 1998, which renders it marital property. *See* § 20–3–630(A) (stating marital property is all real and personal property acquired during the marriage and owned as of the date of filing or commencement of marital litigation). The mobile home and surrounding acreage were appraised at $70,000, and at the time of the order, the mortgage on the home was $25,000, leaving $45,000 in equity to be divided between Husband and Wife.

Husband testified he received $100,000 from his father as an inheritance, and he spent a portion of this inheritance to improve the marital residence. Husband fails to establish the specific dollar amount he spent from his inheritance, contending in his brief that "a remaining portion of this inheritance was placed into the marital home," and stating at the hearing

that he spent "almost half of it on [the marital residence] if you're gonna include tractors and everything else to improve the land. ..." Regardless, the family court took Husband's expenditures from his inheritance into consideration by giving Husband 10% more of the marital estate than Wife as well as awarding Husband the tractors and equipment on the land that he purchased with his inheritance. Accordingly, we discern no error in the family court's decision to allocate 60% of the marital residence's equity to Husband.

### 3. Alimony

Husband argues the family court's alimony award to Wife was excessive. We disagree.

An award of alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion. *Dearybury v. Dearybury,* 351 S.C. 278, 282, 569 S.E.2d 367, 369 (2002). An abuse of discretion occurs if the court's ruling is controlled by an error of law or if the ruling is based upon findings of fact that are without evidentiary support. *Sharps v. Sharps,* 342 S.C. 71, 79, 535 S.E.2d 913, 917 (2000).

"The purpose of alimony is to provide the ex-spouse a substitute for the support which was incident to the former marital relationship." *Love v. Love,* 367 S.C. 493, 497, 626 S.E.2d 56, 58 (Ct.App.2006). "Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage." *Craig,* 365 S.C. at 292, 617 S.E.2d at 362 (internal citations omitted). The objective of alimony should be to insure that the parties separate on as equal a basis as possible. *Patel v. Patel,* 347 S.C. 281, 291, 555 S.E.2d 386, 391 (2001). Thus, "[i]t is the duty of the family court to make an alimony award that is fit, equitable, and just if the claim is well founded." *Allen v. Allen,* 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct.App.2001).

When awarding alimony, the family court considers the following factors: (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated

earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; (12) prior support obligations; and (13) other factors the court considers relevant. S.C.Code Ann. § 20–3–130(C) (Supp.2009); *Patel*, 347 S.C. at 290, 555 S.E.2d at 391 (holding that the family court is required to consider all relevant factors in determining alimony).

The family court awarded Wife $1,000 per month in permanent periodic alimony. In granting Wife alimony, the family court considered the length of the marriage, Husband's and Wife's education, the parties' health, Husband's greater income and ability to pay alimony, and Wife's need for alimony based on the differences in their standards of living. The family court properly considered these relevant statutory factors from section 20–3–130(C) to insure Wife would be able to maintain a standard of living similar to what she enjoyed during the parties' marriage. *See Craig*, 365 S.C. at 292, 617 S.E.2d at 362 ("Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage.").

■■■ Husband's claim that Wife is not entitled to alimony because she is underemployed is unfounded because she works full-time as an aide to mentally disabled children in the public school system and based on her education and past employments, she is working to her full earning potential. Moreover, Husband has the ability to pay Wife the ordered alimony based on his monthly earnings of $4,300, which is far superior to Wife's monthly wages. Any reduction in Wife's alimony would serve to penalize Wife when she has already attempted to defray her expenses by maintaining full-time employment and her own health benefits. Accordingly, the family court's award of alimony to Wife was appropriate.

### 4. Attorneys' Fees

Husband argues if this court finds Husband was entitled to a divorce based on Wife's adultery, we should reverse the award of $8,038.65 in attorneys' fees to Wife. Our finding that Husband failed to establish Wife committed adultery disposes of Husband's argument regarding the propriety of paying

Wife's attorneys' fees. *See Whiteside v. Cherokee County Sch. Dist. No. One,* 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (stating appellate courts need not address remaining issues when resolution of prior issue is dispositive); *Haselden v. Haselden,* 347 S.C. 48, 65, 552 S.E.2d 329, 338 (Ct.App.2001) (finding one of the husband's arguments regarding attorneys' fees without merit when that argument to overturn the award was based on his unsuccessful contention that the family court's contempt ruling was in error).

## CONCLUSION

Accordingly, the family court's decision is

**AFFIRMED.**

SHORT and LOCKEMY, JJ., concur.