1212

C. Carl JOHNSON, Appellant-Respondent v. Terry Cobb JOHNSON, Respondent-Appellant.

(372 S. E. (2d) 107)

Court of Appeals

*C. Rauch Wise,* of *Wise & Tunstal,* and *Joseph M. Pracht,* of *Pracht & Wyndham,* Greenwood, *for appellant-respondent.*

*Robert J. Thomas,* Columbia, *for respondent-appellant.*

Heard March 14, 1988.

Decided Aug. 29, 1988.

BELL, Judge:

This is a divorce action. Both parties appeal from the final decree of divorce. The issues on appeal concern (1) the equitable distribution of the marital estate; (2) the award of rehabilitative alimony to the wife; and (3) the award of attorney's fees to the wife. We affirm in part and reverse in part and remand.

C. Carl Johnson, a dentist practicing in Greenwood, South Carolina, proposed marriage to Terry Cobb, a dental hygienist working in Columbia, in April 1985. Dr. Johnson made the proposal by telephone, asking Terry to quit her job and marry him. Terry immediately accepted the proposal. It was her first marriage, his second.

During the five week engagement, Dr. Johnson told Terry he wanted her to be his wife, homemaker, and companion. He promised she would never have to work again outside the home. He suggested she dispose of much of her furniture, because together they had more than they needed for the marital home. Five days before the wedding, and after Terry quit her job, gave up her apartment in Columbia, and disposed of many of her belongings, Dr. Johnson presented her with an antenuptial agreement drafted by his lawyer. The

family court found that he presented it in a way that left Terry with the belief there would be no wedding unless she signed it. She signed in the kitchen of Dr. Johnson's home without consulting an attorney. The family court ruled that the agreement was procedurally and substantively unfair and, therefore, void. Dr. Johnson does not contest that ruling.

The parties were wed on May 11, 1985. After the wedding, the marriage began to deteriorate rapidly due to Dr. Johnson's conduct. We need not detail his behavior. Suffice it to say, he severely mistreated Mrs. Johnson, mentally and physically abusing her in many ways. Among other things, he battered her on at least three occasions, the last consisting of seven or eight blows to her face. After submitting to fourteen months of continuous abuse, and fearing for her physical safety, Mrs. Johnson left the marital home on July 14, 1986. She went to live with her mother. Thenceforward, the parties lived separately.

On August 21, 1986, Dr. Johnson commenced this action seeking to enforce the antenuptial agreement. Mrs. Johnson answered, denying the validity of the agreement, and counterclaimed, seeking a divorce on the ground of physical cruelty. She also petitioned for an equitable division of marital property, an award of alimony, and attorney's fees.

In an unusually detailed order, the family court declared the antenuptial agreement void; granted a divorce on the ground of physical cruelty; identified, valued, and distributed the marital estate; awarded Mrs. Johnson rehabilitative alimony for a period of twelve months; and granted her partial attorney's fees. Dr. Johnson does not contest the judgment of divorce. He does challenge the equitable distribution and the attorney's fees. Mrs. Johnson appeals from the award of alimony and the attorney's fees.

I.

A.

Each party brought previously acquired property into the marriage. Among other things, Dr. Johnson owned a house at Wellington Green, which the parties used as the marital residence; a 1976 Mercedes automobile,

which he let Mrs. Johnson use as her own during the marriage; over $33,000 of household contents; a Keogh account valued at the time of divorce at $189,428; Individual Retirement Accounts (IRA's) valued at the time of divorce at $9,574; a Kiawah Island property; a Belle Meade property; and a MayApple property. For convenience, we shall refer to these items as the "disputed property."

In the family court, Mrs. Johnson argued the "disputed property" was transmuted into marital property and became subject to equitable distribution. Dr. Johnson maintained that all property acquired before the marriage remained separate property during the marriage and was not subject to equitable distribution.

The family court judge, while expressing the opinion that the "disputed property" was "probably" transmuted into marital property, in effect treated it as Dr. Johnson's separate property in the actual equitable distribution. The judge held, however, that the increase in value of these properties during the marriage was marital property subject to equitable distribution. Dr. Johnson asserts this was error.

### B.

The doctrine of equitable distribution is based on a recognition that marriage is, among other things, an economic partnership. Upon dissolution of the marriage, property acquired during the marriage should be divided and distributed in a manner which fairly reflects each spouse's contribution to its acquisition, regardless of which spouse holds legal title. *Walker v. Walker*, 295 S. C. 86, 368 S. E. (2d) 89 (Ct. App. 1988).

In making an equitable distribution of marital property, the court must (1) identify the marital property, both real and personal, to be divided between the parties; (2) determine the fair market value of the property so identified; (3) apportion the marital estate according to the contributions, both direct and indirect, of each party to the acquisition of the property during the marriage, their respective assets and incomes, and any special equities they may have in marital assets; and (4) provide for an equitable division of the marital estate, including the manner in which distribution is to take place. *Toler v. Toler*, 292 S. C. 374, 356 S. E.

(2d) 429 (Ct. App. 1987); *Gibson v. Gibson,* 283 S. C. 318, 322 S. E. (2d) 680 (Ct. App. 1984).

## C.

Identification of marital property is controlled by the provisions of the Equitable Apportionment of Marital Property Act.[1] The Act defines marital property as all real and personal property acquired by the parties during the marriage which is owned as of the date of filing or commencement of marital litigation, regardless of how legal title is held. Section 20-7-473; *see also, Berry v. Berry,* 290 S. C. 351, 350 S. E. (2d) 398 (Ct. App. 1986), *affirmed,* 294 S. C. 334, 364 S. E. (2d) 463 (1988) (marital property is all property acquired during the marriage which does not fall within some established exception).

The spouse claiming an equitable interest in property upon dissolution of the marriage has the burden of proving the property is part of the marital estate. *Cf., Roberts v. Roberts,* ____ S. C. ____ , 370 S. E. (2d) 881 (Ct. App. 1988). If she carries this burden, she establishes a prima facie case that the property is marital property.

If the opposing spouse then wishes to claim that the property so identified is not part of the marital estate, he has the burden of presenting evidence to establish its nonmarital character. *Miller v. Miller,* 293 S. C. 69, 358 S. E. (2d) 710 (1987).

Under the Act, property acquired by either party before the marriage is nonmarital property. Section 20-7-473(2); *see also, Sauls v. Sauls,* 287 S. C. 297, 337 S. E. (2d) 893 (Ct. App. 1985). Property acquired during the marriage in exchange for property acquired before the marriage is also nonmarital property. Section 20-7-473(3). Likewise, any increase in the value of nonmarital property during the marriage is nonmarital property, except to the extent the increase resulted directly or indirectly from the efforts of the other spouse during the marriage. Section 20-7-473(5); *see also, Miller v. Miller, supra.*

---

[1] Section 1, Act No. 522, Acts and Joint Resolutions of the General Assembly of South Carolina, Regular Session, 1986, 64 Stat. at Large 3264, 3265 (codified as Sections 20-7-471 through 20-7-479, Code of Laws of South Carolina, 1976, as amended).

If the opposing party shows that an item of property was either acquired before the marriage or falls within a statutory exception, this rebuts the prima facie case for its inclusion in the marital estate. However, it does not necessarily end the matter.

In certain circumstances, nonmarital property, as defined by the Act, may be transmuted into marital property during the marriage. Property, nonmarital at the time of its acquisition, may be transmuted (1) if it becomes so commingled with marital property as to be untraceable; (2) if it is titled jointly; or (3) if it is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties to make it marital property. *Trimnal v. Trimnal*, 287 S. C. 495, 339 S. E. (2d) 869 (1986); *Wyatt v. Wyatt*, 293 S. C. 495, 361 S. E. (2d) 777 (Ct. App. 1987).

As a general rule, transmutation is a matter of intent to be gleaned from the facts of each case.[2] The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage. Such evidence may include placing the property in joint names, transferring the property to the other spouse as a gift, using the property exclusively for marital purposes, commingling the property with marital property, using marital funds to build equity in the property, or exchanging the property for marital property.[3] The mere use of separate property to

---

[2] *See Clinkscales v. Clinkscales*, 275 S. C. 308, 270 S. E. (2d) 715 (1980) (interspousal gift); *Walton v. Walton*, 282 S. C. 165, 318 S. E. (2d) 14 (1984) (separately titled residence acquired before marriage); *Hussey v. Hussey*, 280 S. C. 418, 312 S. E. (2d) 267 (Ct. App. 1984) (proceeds of inherited property commingled); *Cooksey v. Cooksey*, 280 S. C. 347, 312 S. E. (2d) 581 (Ct. App. 1984) (proceeds of inherited property used to purchase jointly titled marital residence); *Rampey v. Rampey*, 286 S. C. 153, 332 S. E. (2d) 213 (Ct. App. 1985) (inherited property jointly titled and used in support of marriage); *Barr v. Barr*, 287 S. C. 13, 336 S. E. (2d) 481 (Ct. App. 1985) (third party gift).

[3] *See Cooksey v. Cooksey, supra* (property placed in joint names); *Peterkin v. Peterkin*, 293 S. C. 311, 360 S. E. (2d) 311 (1987) (using for marital purposes); *Trimnal v. Trimnal, supra* (commingling with marital property); *Wyatt v. Wyatt, supra* (building equity); *cf. Burgess v. Burgess*, 277 S. C. 283, 286 S. E. (2d) 142 (1982); *Bailey v. Bailey*, 293 S. C. 451, 361 S. E. (2d) 348 (Ct. App. 1987) (interspousal gift). An exchange of nonmarital property for marital property should not be confused with an exchange of nonmarital

support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation.[4] The primacy of the parties' intent in determining if property is marital or nonmarital is underscored by the Act itself, which permits the parties to exclude property from the marital estate by written agreement. *See* Section 20-7-473(4).

### D.

Turning to the facts of this case, we hold the family court erred in concluding the "disputed property" was transmuted. The record discloses a clear, consistent intent of Dr. Johnson to maintain the nonmarital character of all property he acquired before the marriage. In particular, the antenuptial agreement stated plainly that neither party would acquire any interest in the separately titled property of the other by reason of the marriage. Although the antenuptial agreement is not an enforceable contract, it is evidence of Dr. Johnson's intent to maintain his previously acquired, nonmarital property as separate property. Unless subsequent acts of the parties during the marriage showed a change of intent, the property could not be transmuted. Here we find no evidence of such a change. Consequently, the "disputed property" was not transmuted.

The family court found the "disputed property" was probably transmuted; but in the actual apportionment and distribution of the marital estate, the court allocated all property which Dr. Johnson acquired before the marriage to him. Since he received the "disputed property" free and clear from any equity in favor of Mrs. Johnson, and did not suffer any corresponding reduction in his share of the remaining marital estate, the final result was the same as if the property had been found to be nonmarital. Thus, any

---

property for other nonmarital property. The latter case is governed by Section 20-7-473(3); the former is not.

[4] *See Peterkin v. Peterkin, supra* (income from nonmarital property used for marital purposes); *Walton v. Walton, supra* (separately titled house acquired before marriage used as marital residence); *Brooks v. Brooks,* 289 S. C. 352, 345 S. E. (2d) 510 (Ct. App. 1986) (portion of inherited property used in support of marriage); *Sauls v. Sauls, supra* (separately titled marital residence purchased and paid for prior to marriage).

error in characterizing the "disputed property" as marital property was harmless.

The only property considered for the purposes of apportionment and distribution of the marital estate was the increase in value of the parties' realty and personalty during the marriage. The court found these assets appreciated a total of $94,492 in value during the marriage. Following Section 20-7-473(5), the court determined that only the portion of the increase resulting directly or indirectly from the efforts of the parties was marital property. The court valued this portion of the appreciation at $55,969. The remaining appreciation was treated as nonmarital property.

Items the court treated as part of the marital estate included such things as household contents acquired during the marriage, contributions of marital funds to Dr. Johnson's Keogh account, and the use of marital funds to reduce mortgage indebtedness on his separately titled real estate. These items were clearly marital property.[5] The judge correctly concluded that they were subject to equitable apportionment and distribution.

### E.

Dr. Johnson does not challenge the family court's valuation of the parties' marital and nonmarital assets. He does argue, however, that even if the marital estate was correctly identified and correctly valued, the judge erred in apportioning it.

In making an apportionment of the marital estate, the court must consider fifteen criteria specified by the Act, giving to each such weight as it finds appropriate on the facts of the case. *See* Section 20-7-472.[6] These criteria guide the court in exercising its discretion over apportionment of the marital property. They are nothing more than equities

---

[5] *See Morris v. Morris*, 268 S. C. 104, 232 S. E. (2d) 326 (1977) (household contents acquired during marriage); *Watson v. Watson*, 291 S. C. 13, 351 S. E. (2d) 883 (Ct. App. 1986) (contribution of spousal income to voluntary pension plan); *Trimnal v. Trimnal, supra* (reduction of mortgage indebtedness on separately titled real estate by joint efforts during marriage).

[6] These statutory criteria replace the thirteen so-called *"Shaluly* factors" of pre-Act law. *See Shaluly v. Shaluly*, 284 S. C. 71, 325 S. E. (2d) 66 (1985).

to be considered in reaching a fair distribution of marital property. They subserve the ultimate goal of apportionment, which is to divide the marital estate, as a whole, in a manner which fairly reflects each spouse's contribution to the economic partnership and also the relative effect of ending that partnership on each of the parties.[7]

## F.

In this case, the family court determined that the marital estate should be apportioned fifty percent to each spouse. Dr. Johnson argues that an equal apportionment is inequitable because his direct contributions far exceeded those of Mrs. Johnson. There is no question that most of the appreciation in the value of the assets was attributable to Dr. Johnson's earnings and income during the marriage. Dr. Johnson's argument overlooks the fact, however, that the direct contribution of each party to the acquisition of marital property is not the only criterion to be considered in apportionment. The record reflects several important equities in Mrs. Johnson's favor which Dr. Johnson ignores.

First, there is her homemaker's equity. At Dr. Johnson's insistence, the parties agreed that in their marriage he would be the income earner and she would be his wife, homemaker, and companion. Dr. Johnson asked Mrs. Johnson to give up her career and promised she would never again have to work outside the home. Prior to this suit, Dr. Johnson apparently considered this arrangement to be an equal partnership of the spouses. During the marriage, Mrs. Johnson faithfully performed her homemaker role under the

---

[7] Prior to *Shaluly v. Shaluly, supra,* the law looked solely to the economic status of the parties at the time of divorce or separation. The primary factor to be considered was the relative incomes and material contributions of the spouses during the marriage. The court could also give secondary consideration to relative fault in ending the marriage and to the net worth of the nonmarital estate of each party. *See Foreman v. Foreman,* 280 S. C. 461, 313 S. E. (2d) 312 (Ct. App. 1984). In other words, judicial enquiry was retrospective. It sought to determine how the spouses had reached the economic status they enjoyed before separation. Under *Shaluly* and the Act, the court must consider not only retrospective factors, but also prospective factors (e.g., earning potential, opportunities for future acquisition of capital assets, vested retirement benefits, child custody) in reaching a fair apportionment. This approach gives consideration to the impact of separation on the future economic status of the parties.

most trying of circumstances. Because she gave up her own career and dutifully contributed her labor to provide a good marital home for her husband, she acquired an equity in the marital estate to be considered in making the apportionment. *Cf., Parrott v. Parrott*, 278 S. C. 60, 292 S. E. (2d) 182 (1982).

Second, Dr. Johnson's earnings were property of the marriage, not his separate property as he seems to suppose. *See Orszula v. Orszula*, 292 S. C. 264, 356 S. E. (2d) 114 (1987) (wages and substitutes for wages received during marriage are marital property); *Hamiter v. Hamiter*, 290 S. C. 508, 351 S. E. (2d) 581 (Ct. App. 1986) (funds derived from salary earned during marriage are marital property). The contribution of these marital earnings to the appreciation in value of his nonmarital property represented nothing more than a change in the form of the marital property. Marital property in the form of earnings simply became marital property in the form of appreciation in the value of the nonmarital estate. This was a factor to be considered in making the apportionment.

Third, Mrs. Johnson is entitled to a special equity in the Kiawah Island property. When the parties married, the Kiawah property had deteriorated to the point that it was no longer rentable. Mrs. Johnson personally renovated the property, contributing her own labor and skills to improve it. As a direct result of her efforts, the property became marketable and began producing rental income, amounting to $7,373 in the last eleven weeks of the summer of 1986. A spouse has an equitable interest in improvements to property to which she has contributed, even if the property is nonmarital. *Webber v. Webber*, 285 S. C. 425, 330 S. E. (2d) 79 (Ct. App. 1985).

In addition to ignoring these equities in Mrs. Johnson's favor, Dr. Johnson also quarrels with the weight the family court gave to several statutory factors. Among other things, he argues that the length of the marriage should have weighed heavily in his favor.

How the individual factors are weighed depends on the facts of each case. *See Foreman v. Foreman, supra.* The statute vests in the trial judge, not the appellate court, the discretion to decide what weight should be assigned to the

various factors. *Cf., Simon v. Flowers*, 231 S. C. 545, 99 S. E. (2d) 391 (1957). On review, this Court looks to the fairness of the overall apportionment. *See Morris v. Morris*, 295 S. C. 37, 367 S. E. (2d) 24 (1988). If the end result is equitable, it is irrelevant that this Court might have weighed specific factors differently than the trial judge. *See Simon v. Flowers*, *supra.*

In this case, the family court reached an eminently fair result. The total net value of the property owned by the parties at divorce was $663,288. Dr. Johnson, with an earning capacity and income well over $100,000 a year, received marital and nonmarital assets totalling $628,928, with a substantial opportunity for future acquisition of capital assets. Mrs. Johnson, with an earning capacity of $18,000 a year, received marital and nonmarital assets totalling $34,360. Dr. Johnson's property includes substantial income-producing assets; Mrs. Johnson's, none. On these facts, Dr. Johnson's claim that Mrs. Johnson's award was excessive is patently without merit.

We affirm the equitable distribution.

## II.

Mrs. Johnson appeals from the court's award of rehabilitative alimony. She contends an award of $300 a month for twelve months is plainly inadequate to maintain the standard of living she enjoyed during the marriage. She also argues that there is no evidence to show she would be able to support herself at her marital standard of living after a twelve month rehabilitation period.

Alimony is a substitute for the support which is normally incident to the marital relationship. *Lide v. Lide*, 277 S. C. 155, 283 S. E. (2d) 832 (1981). Ordinarily, the purpose of alimony is to place the supported spouse, as nearly as is practical, in the position of support she enjoyed during the marriage. *See Voelker v. Hillock*, 288 S. C. 622, 344 S. E. (2d) 177 (Ct. App. 1986).

Alimony may be awarded as periodic payments or in a lump sum. Section 20-3-130, Code of Laws of South Carolina, 1976; *McCune v. McCune*, 284 S. C. 452, 327 S. E. (2d) 340 (1985). It may also be awarded as permanent support or as temporary, rehabilitative support. *See* Section 20-3-130; *cf.,*

*Brewer v. Brewer*, 242 S. C. 9, 129 S. E. (2d) 736 (1963) (permanent alimony); *Herring v. Herring*, 286 S. C. 447, 335 S. E. (2d) 366 (1985) (temporary, rehabilitative support). If a claim for alimony is well founded, the law favors the award of permanent, periodic alimony. *See O'Neill v. O'Neill*, 293 S. C. 112, 359 S. E. (2d) 68 (Ct. App. 1987).

The power to award lump sum alimony should be exercised only where special circumstances require it. *Millis v. Millis*, 282 S. C. 610, 320 S. E. (2d) 66 (Ct. App. 1984). Lump sum awards are not favored and should be given only in exceptional cases or when consented to. *Matheson v. McCormac*, 186 S. C. 93, 195 S. E. 122 (1938). An award of lump sum alimony must be supported by some impelling reason for its necessity or desirability. *Millis v. Millis, supra.*[8]

Similarly, rehabilitative alimony may be awarded only upon a showing of special circumstances justifying a departure from the normal preference for permanent, periodic support. The purpose of rehabilitative alimony is to encourage a dependent spouse to become self supporting after a divorce. *Toler v. Toler, supra.* It permits former spouses to develop their own lives free from obligations to each other. *Id.* However, it should be approved only in exceptional circumstances, in part, because it seldom suffices to maintain the level of support the dependent spouse enjoyed as an incident to the marriage. *See Id.; Voelker v. Hillock, supra.*

The factors to be considered in awarding rehabilitative alimony include: (1) the duration of the marriage; (2) the age, health, and education of the supported spouse; (3) the financial resources of the parties; (4) the parties' accustomed standard of living; (5) the ability of the supporting spouse to meet his needs while meeting those of the supported spouse; (6) the time necessary for the supported spouse to acquire job training or skills; (7) the likelihood that the supported spouse will successfully complete retraining; and (8) the supported spouse's likelihood of success in

---

[8] The factors to be considered in awarding lump sum alimony are set forth in *Atkinson v. Atkinson*, 279 S. C. 454, 309 S. E. (2d) 14 (Ct. App. 1983). Special circumstances justifying a lump sum award include the need to continue support after the death of the supporting spouse and the likelihood of default if periodic payments are awarded. *See McCune v. McCune, supra, Hendricks v. Hendricks*, 285 S. C. 591, 330 S. E. (2d) 553 (Ct. App. 1985).

the job market. There must be evidence demonstrating the self sufficiency of the supported spouse at the expiration of the ordered payments in order for rehabilitative alimony to be granted. *Toler v. Toler, supra.*

In this case, the court found as a fact that Mrs. Johnson's standard of living during the marriage was much higher than her premarital standard of living and more than her income after dissolution of the marriage could sustain. Without explaining why rehabilitative alimony was appropriate, the judge fixed alimony at an amount which, at best, would restore her to her standard of living *before* she married, not, as the law requires, the standard of living she enjoyed *during* the marriage. This was an error of law amounting to an abuse of discretion.

The record reveals a great disparity in the financial resources and earning capacities of the parties. Moreover, it shows that Dr. Johnson has the financial ability to meet his own needs while supporting Mrs. Johnson at the standard of living she enjoyed during the marriage. It is likewise apparent that Mrs. Johnson could not possibly sustain her marital standard of living on her own earnings at the end of the period of rehabilitation. To require Dr. Johnson to pay a paltry $3,600 in support of his former spouse is plainly insufficient. These circumstances mandate an award of permanent, periodic alimony.

Dr. Johnson argues, and the family court agreed, that the short duration of this marriage weighs in favor of rehabilitative alimony. He overlooks the fact that his own conduct was responsible for its quick demise. Mrs. Johnson was entirely blameless for the failure of the marriage. When she married, she was entitled to expect a lifelong partnership which would provide her with a high standard of living and great financial security. Without cause, Dr. Johnson brought those prospects to an end. In effect, he now asks us to treat the result of his own misconduct as an equity in his favor.

Unlike most cases, fault is a substantial factor in awarding alimony in this case. Dr. Johnson, not Mrs. Johnson, is to blame for the shortness of the marriage. When the duration of the marriage is seen in its proper light, the equities favor Mrs. Johnson, not Dr. Johnson. An at fault spouse cannot

destroy a marriage and then claim its short duration entitles him to more favorable consideration when the economic adjustments attendant to divorce are made.

We reverse the award of rehabilitative alimony and remand for an award of permanent, periodic alimony. *See Voelker v. Hillock, supra.* The factors which should guide the judge's discretion in making the award are set forth in *Lide v. Lide, supra.* While based upon the reasonable needs of the wife to maintain her marital standard of living, the award should also take into account her own earning capacity. Alimony should not serve as a disincentive for her to improve her employment potential nor dissuade her from providing, to the extent feasible, for her own support. *Josey v. Josey,* 291 S. C. 26, 351 S. E. (2d) 891 (Ct. App. 1986).

### III.

Finally, Mrs. Johnson appeals from the court's refusal to award her full attorney's fees.

It is undisputed that her fees actually incurred were $12,901. The court found that her attorney enjoys high professional standing and that the fee charged was customary for similar legal services. Dr. Johnson does not contend the attorney's billing rate is unreasonable. Neither is there any question about Dr. Johnson's ability to pay.

On the other hand, Mrs. Johnson had no means to pay for defense of the action. Under the fee agreement with her lawyer, the practical effect of the court's failure to award a full fee was to reduce her modest equitable distribution award by almost fifteen percent.

The court found that Dr. Johnson initiated the lawsuit and that his attempt to enforce an invalid antenuptial agreement rendered the case more difficult to defend. According to the court, he also failed to furnish discovery information and to file a proper financial declaration, as required by the rules of court, which further increased the time and expense of litigation for Mrs. Johnson. For example, when Mrs. Johnson's attorney sought disclosure of his assets, Dr. Johnson disclosed assets of only $7,500. By other means, Mrs. Johnson's attorney was ultimately able to uncover assets in his name of $653,773.

Despite these facts, the court, without giving any reason

to justify its action, refused to award full fees. A decision lacking a discernible reason is arbitrary and constitutes an abuse of discretion. *See Turbeville v. Morris*, 203 S. C. 287, 26 S. E. (2d) 821 (1943). We hold that the court abused its discretion in awarding attorney's fees in an amount less than actually incurred.

In reaching this conclusion, we have given consideration to Dr. Johnson's contention that the fee awarded is excessive. His primary complaint is that Mrs. Johnson's lawyer spent too many hours preparing the case. He objects, in particular, to the thirty-five hours spent on the pretrial brief or proposed order, the thirteen hours spent in conference with the client, and four hours spent in trial preparation. Given the factual and legal complexity of the case, the vigorous manner in which Dr. Johnson contested every issue, his lack of cooperation in discovery which forced Mrs. Johnson to obtain relevant evidence by other means, and the excellence of her attorney's work in briefing and presenting the case, we are satisfied the number of hours spent were reasonable and justified. We find no evidence that the hours were inflated by unnecessary work.

The award of attorney's fees is reversed and remanded for redetermination in light of our opinion. Of course, Mrs. Johnson will incur additional expenses as a result of this appeal and the remand. The family court should include these in its determination of the attorney's fee to be finally awarded in the case.

For the reasons stated, we affirm the judgment of the court as to the apportionment and distribution of the marital estate. We reverse and remand the judgment as to alimony and attorney's fees.

Affirmed in part, reversed in part and remanded.

SANDERS, C. J., and GARDNER, J., concur.