Carolyn TAYLOR–CRACRAFT, Appellant,

v.

Gerald CRACRAFT, Respondent.

Appellate Case No. 2014–001483

Opinion No. 5425

Court of Appeals of South Carolina.

Heard March 15, 2016

Filed July 13, 2016

Rehearing Denied September 23, 2016

Victoria L. Eslinger, James Grant Long, III, Manton M. Grier, Jr., and Jennifer Joan Hollingsworth, all of Nexsen Pruet, LLC, of Columbia, for Appellant Carolyn Taylor–Cracraft.

John S. Nichols and Blake Alexander Hewitt, of Bluestein Nichols Thompson & Delgado, LLC, of Columbia; and William Randall Phipps, of Phipps Family Law, P.A., of Hilton Head Island, for Respondent Gerald Cracraft.

LOCKEMY, C.J.:

In this divorce action, Carolyn Taylor–Cracraft (Wife) appeals the family court's order, arguing (1) the family court lacked jurisdiction to apportion her 2.26 acres of riverfront property (the Highway 221 Property) because it was nonmarital property that had not been transmuted into marital property; (2) the family court erred in listing the Highway 221 Property and the parties' jointly-owned corporation, River-Winds Landing, Inc. (the Corporation), for sale at $800,000; (3) the family court's 61% to 39% division of the marital estate was not equitable and the family court erred in "awarding" her all of the marital debt; and (4) the family court erred in not awarding attorney's fees to her. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

Wife and her husband, Gerald Cracraft (Husband), married on October 7, 2001. They separated on July 13, 2010. No children were born of the marriage.

On September 2, 2011, Wife filed for a divorce from Husband. On April 3, 2014, the family court granted Wife a divorce on the ground of adultery. The family court identified the marital property and awarded 61% of the marital property to Wife and 39% to Husband. The family court determined the Highway 221 Property Wife owned before the marriage was transmuted into marital property. In finding the Highway 221 Property transmuted, the family court concluded the property was used in support of the marriage and "exclusively for marital purposes with the expectation and intent of creating a joint retirement" by using the Corporation to operate a marina on the property. The family court ordered the Highway 221 Property and the Corporation to be listed for sale for $800,000. Last, the family court ordered Husband and Wife to pay their own attorney's fees. Wife appealed.

## STANDARD OF REVIEW

■■ "Appellate courts review appeals from the family court de novo." *Buist v. Buist*, 410 S.C. 569, 574, 766 S.E.2d 381, 383 (2014). "Thus, an appellate court may find facts in accordance with its own view of the preponderance of the evidence." *Id.* "[H]owever, this broad scope of review does not require the Court to disregard the findings of the family court, which is in a superior position to make credibility determinations." *Crossland v. Crossland*, 408 S.C. 443, 451, 759 S.E.2d 419, 423 (2014). "The appellant retains the burden to demonstrate the error in the family court's findings of fact." *Buist*, 410 S.C. at 574, 766 S.E.2d at 383.

## LAW/ANALYSIS

### I. Transmutation of the Highway 221 Property

■ Wife argues the family court lacked jurisdiction to apportion the Highway 221 Property because it was nonmarital property that was not transmuted into marital property. We agree.

Section 20–3–630(A) of the South Carolina Code (2014) defines "marital property" as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation . . . regardless of how legal title is held." However, "property acquired by either party before the marriage" and "any increase in value in non-marital property, except to the extent that the increase resulted directly or indirectly from efforts of the other spouse during marriage" are considered nonmarital property. § 20–3–630(A)(2) & (5). "The [family] court does not have jurisdiction or authority to apportion nonmarital property." S.C. Code Ann. § 20–3–630(B) (2014).

 Property that is nonmarital when acquired may be transmuted into marital property in three ways: (1) "it becomes so commingled with marital property that it is no longer traceable," (2) it "is titled jointly," or (3) it "is used by the parties in support of the marriage or in some other way that establishes the parties' intent to make it marital property." *Wilburn v. Wilburn*, 403 S.C. 372, 384, 743 S.E.2d 734, 740 (2013). "As a general rule, transmutation is a matter of intent to be gleaned from the facts of each case." *Johnson v. Johnson*, 296 S.C. 289, 295, 372 S.E.2d 107, 110 (Ct. App. 1988). "The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage." *Id.* at 295, 372 S.E.2d at 110–11. "Such evidence may include placing the property in joint names, transferring the property to the other spouse as a gift, using the property exclusively for marital purposes, commingling the property with marital property, using marital funds to build equity in the property, or exchanging the property for marital property." *Id.* at 295, 372 S.E.2d at 111. "The mere use of separate property to support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation." *Id.* at 296, 372 S.E.2d at 111.

 "A party claiming an equitable interest in property upon divorce bears the burden of proving the property is marital." *Wilburn*, 403 S.C. at 382, 743 S.E.2d at 740. "If the

party presents evidence to show the property is marital, the burden shifts to the other spouse to present evidence to establish the property's nonmarital character." *Id.*

In *Murray v. Murray*, the husband brought a home and several rental properties into the marriage. 312 S.C. 154, 156–57, 439 S.E.2d 312, 314 (Ct. App. 1993). The income from the rental properties was deposited in a joint checking account, and the wife made contributions of labor and time to the improvement and maintenance of the marital home and rental properties. *Id.* at 157–58, 439 S.E.2d at 314–15. Nevertheless, this court held the family court could have reasonably found the wife failed to prove the properties were transmuted. *Id.* at 158, 439 S.E.2d at 315 (finding the family court did not commit reversible error in determining the home and rental properties were not marital property). The husband's will, executed eight years into the marriage, provided that upon his death his real property would be liquidated—with one-third of the proceeds to go to his wife and the remaining two-thirds to go to his children—and that his wife could remain in the marital home only until the estate was settled. *Id.* "This [was] evidence that he considered the marital residence and the rental properties, which were still titled in his name alone, to be his separate property after his marriage to [his wife]." *Id.* However, "[a] spouse has an equitable interest in appreciation of property to which she contributed during the marriage, even if the property is nonmarital." *Id.* at 154, 159, 439 S.E.2d at 316 (finding the family court did not err in awarding the wife a special equity of $13,250 in the nontransmuted marital home, which represented fifty percent of the appreciation in the home during the parties' marriage).

Wife owned the Highway 221 Property before the parties married in October 2001. She had received the property through her divorce from her first husband in June 2001. In 2002, Husband and Wife decided to build a marina on the Highway 221 Property, which was titled in Wife's name only. The parties intended to use the profits from the marina to supplement their retirement incomes and enter early retirement. The parties operated the marina through the Corporation, which they incorporated on June 6, 2002.

Wife leased the Highway 221 Property to the Corporation for the operation of the marina. Wife signed the lease agreement in her capacity as landlord, and Husband signed the lease on behalf of the tenant Corporation in his capacity as vice-president and treasurer of the Corporation. The lease agreement stated the lease was made between Wife and the Corporation on July 1, 2002. The lease agreement provided for a three-year lease commencing on July 1, 2002, and expiring on June 30, 2005, and gave the Corporation an option to extend the lease for five additional terms of three years each. The typed date "April 2004" on the notary's signature block was crossed out and replaced with the handwritten date "July 2002." Husband testified he remembered signing the lease agreement but did not recall when he signed it. Wife denied backdating the date on the notary's signature block to read "July 2002." The lease provided the Corporation would not pay monthly rent; instead the Corporation would pay to have the property cleared and graded in the first year of the lease term and would pay the county property taxes in the second and third years of the lease term. The lease permitted the Corporation to remove its personal property and trade fixtures upon the expiration of the lease. However, the lease provided, "All alterations, improvements[,] and additions, upon completion of construction thereof, shall become part of the Leased Premises and the property of the Landlord without payment therefore by Landlord and shall be surrendered to Landlord at the end of the term."

On April 19, 2004, Wife executed a will. In the will, Wife gave Husband a life estate in the Highway 221 Property and gave her two children a remainder interest in the property upon Husband's death. The will stated the devises of the Highway 221 Property were subject to the lease agreement between Wife and the Corporation.

Husband introduced into evidence a bill from attorney James Poag, Jr., dated April 19, 2004, charging Wife $375 for a will, lease, and spousal election waiver. The family court stated the evidence produced at trial suggested the lease was executed in April 2004 along with Wife's will, "almost two years after the lease was purportedly executed in July 2002."

Wife testified she never intended the Highway 221 Property to be marital property, as evidenced by the lease agreement and her will. Wife testified that she always intended to leave the Highway 221 Property to her children and that Husband knew "from day one that he would never be a part of it; he would never have a part of that land unless I chose to sell it."

In 2008, Wife decided to list the Highway 221 Property and the Corporation for sale in a single listing for $2.4 million. Wife explained she originally did not intend to sell the Highway 221 Property; however, when she and Husband became very tired in 2008 and her health began to fail, she decided to put the property on the market. Wife was unable to sell the Highway 221 Property and the Corporation. Wife admitted that, if someone had purchased the property, the proceeds of the sale would have been used to supplement her and Husband's retirement.

Husband testified he made the following financial contributions to the Corporation: (1) $52,000 from his nonmarital IRA in 2003, which was used during the first stage of constructing the marina; (2) $25,000 from his nonmarital IRA in 2011 to build docks; and (3) $3,000 from his social security check to pay taxes in 2011. There was testimony that Husband contributed time and labor at the marina by overseeing construction, installing riprap, mowing the grass, and operating the marina while Wife worked at her full-time job.

Upon our review of the record, we find the preponderance of the evidence shows the Highway 221 Property was not transmuted. The lease agreement and Wife's will show Wife intended that the Highway 221 Property remain nonmarital after her marriage to Husband. Instead of investing the land directly into the Corporation and making the land a corporate asset, Wife chose to retain ownership and simply lease the land to the Corporation. We find the lease shows Wife did not intend to transmute the property regardless of whether the lease was executed in April 2004—as the family court suspected—or on July 1, 2002, as the lease agreement states.

In addition, we find Wife's 2004 will shows Wife considered the Highway 221 Property to be her separate property after her marriage to Husband. Like the *Murray* will, Wife's will— which gave Husband a life estate in the Highway 221 Property

and gave her two children a remainder interest in the property upon Husband's death—directed the full disposition of the property without indicating Husband had any right to alter the disposition. We also find the fact Wife executed her will two years into the marriage—rather than in 2002 when she and Husband first decided to build the marina—does not render the will less indicative of her intent that the Highway 221 Property remain nonmarital. In *Murray*, the husband executed his will eight years into the marriage, and this court nevertheless found the will was sufficient evidence to affirm the family court's determination that the husband intended the marital home and rental properties to remain his separate property after the marriage. In addition, like the property in *Murray*, the Highway 221 Property has remained titled in Wife's name alone.

We acknowledge that Wife listing the land and the Corporation for sale in 2008 for a single price of $2.4 million might be some evidence that she intended to transmute the property. However, we find the preponderance of the evidence shows Wife did not intend the Highway 221 Property to become marital property.[1] Based on the foregoing, we reverse the

---

1. Our appellate courts have also addressed transmutation where the parties showed an intention to use nonmarital property for their joint retirement. *See Pittman v. Pittman*, 407 S.C. 141, 145–46, 151, 754 S.E.2d 501, 503–04, 506–07 (2014) (finding the husband's land surveying business was transmuted into marital property when the parties decided the wife would reduce the hours she worked as a nurse to work for the business full-time; the parties made all major business decisions jointly; the wife's personal credit was used in support of the business; marital funds were expended to discharge business debts; and the parties agreed to raise the wife's salary to increase her social security income because she was older than the husband—"a decision the parties made for their mutual benefit so they would have more money during their retirement"); *Jenkins v. Jenkins*, 345 S.C. 88, 99, 545 S.E.2d 531, 537 (Ct. App. 2001) (finding acreage and a rental home the husband acquired from his mother were transmuted into marital property when the parties planned to make the home their primary residence during their retirement, the wife was substantially involved in the general care and maintenance of the property, the parties expended marital funds on improving the property, and the husband executed a will leaving the property to the wife). We find this case is distinguishable from *Pittman* and *Jenkins* because the lease and Wife's will show that Wife intended the Highway 221 property to remain nonmarital even though she and Husband intended to use their marina business to supplement their retirement.

family court's finding that the Highway 221 Property was transmuted and remand for the family court to determine whether Husband has an equitable interest in the appreciation of the Highway 221 Property. *See Murray*, 312 S.C. at 154, 159, 439 S.E.2d at 316 ("A spouse has an equitable interest in appreciation of property to which she contributed during the marriage, even if the property is nonmarital.").

## II. Valuation of the Corporation and the Highway 221 Property

Wife argues the family court erred in ordering the Corporation, the Highway 221 Property, and the improvements built on the property to be listed for sale for $800,000. We agree.

Among other requirements, in making an equitable distribution of marital property, the family court must determine the fair market value of the marital property to be divided between the parties. *Johnson*, 296 S.C. at 293, 372 S.E.2d at 110. "By statute, marital property subject to equitable distribution is presumptively valued at the date of the divorce filing." *Moore v. Moore*, 414 S.C. 490, 522, 779 S.E.2d 533, 550 (2015) (citing S.C. Code Ann. § 20-3-630(A)).

"When valuing business interests for the purpose of equitable distribution, the family court should determine the fair market value of the corporate property as an established and going business." *Id.* at 524, 779 S.E.2d at 551 (quoting *Reid v. Reid*, 280 S.C. 367, 373, 312 S.E.2d 724, 727 (Ct. App. 1984)). "This is to be accomplished by considering the business' net asset value, the fair market value for its stock, and earnings or investment value." *Id.*

The family court ordered the Highway 221 Property and the Corporation to be listed for sale for $800,000. Because we find the Highway 221 Property was not transmuted, we hold the family court improperly ordered the Highway 221 Property to be sold with the Corporation. Therefore, we reverse as to this issue and remand for the family court to determine the value of the Corporation alone.

582

### III. Equitable Distribution

 Wife argues the family court's 61% to 39% division of the marital estate was not equitable. Wife also argues the family court erred in " 'awarding' Wife all of the marital debt."

In making an equitable distribution of marital property, the court must (1) identify the marital property, both real and personal, to be divided between the parties; (2) determine the fair market value of the property so identified; (3) apportion the marital estate according to the contributions, both direct and indirect, of each party to the acquisition of the property during the marriage, their respective assets and incomes, and any special equities they may have in marital assets; and (4) provide for an equitable division of the marital estate, including the manner in which distribution is to take place.

*Johnson*, 296 S.C. at 293, 372 S.E.2d at 110. "How the individual factors are weighed depends on the facts of each case." *Id.* at 299, 372 S.E.2d at 113. Section 20–3–620(B) of the South Carolina Code (2004) provides factors for the family court to consider in apportioning marital property and instructs the family court to "give weight in such proportion as it finds appropriate" to each of the factors. One factor the family court considers is the nonmarital property of each spouse. § 20–3–620(B)(7).

As previously stated, we find the Highway 221 Property was not transmuted. Accordingly, we reverse as to this issue and remand for the family court to reapportion the marital estate, which we find does not include the nontransmuted Highway 221 Property. In addition, the family court should reassess the apportionment factors—specifically, the factor relating to the nonmarital property of each spouse—when it reapportions the marital property on remand.

### IV. Attorney's Fees

 Wife argues "attorney's fees should be revisited" if we reverse any portion of the family court's final order. We agree.

 "The court, from time to time after considering the financial resources and marital fault of both parties, may order one party to pay a reasonable amount to the other for attorney fees, expert fees, investigation fees, costs, and suit

money incurred in maintaining an action for divorce from the bonds of matrimony ...." S.C. Code Ann. § 20-3-130(H) (2014).

> In determining whether to award attorney's fees, the family court should consider the following: (1) the party's ability to pay his/her own attorney's fee; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the attorney's fees on each party's standard of living.

*Brown v. Brown*, 408 S.C. 582, 587, 758 S.E.2d 922, 924 (Ct. App. 2014).

Because we find the Highway 221 Property was not transmuted and reverse and remand as to the first three issues raised on appeal, we reverse and remand as to the attorney's fees issue as well. *See Crossland v. Crossland*, 397 S.C. 406, 418, 725 S.E.2d 509, 516 (Ct. App. 2012) (reversing and remanding for the family court to reconsider the issue of attorney's fees when substantive results achieved by counsel were reversed on appeal).

## CONCLUSION

Accordingly, the decision of the family court is

**REVERSED AND REMANDED.**

WILLIAMS and MCDONALD, JJ., concur.