**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Ivery M. Chestnut, Appellant,

v.

Mashell Chestnut, Respondent.

Appellate Case No. 2016-001804

———————

Appeal From Richland County
George M. McFaddin, Jr., Family Court Judge

———————

Unpublished Opinion No. 2018-UP-473
Submitted September 19, 2018 – Filed December 19, 2018

———————

**AFFIRMED**

———————

Hemphill P. Pride, II, of Law Office of Hemphill P. Pride II, LLC, of Columbia; and Gregory Samuel Forman, of Gregory S. Forman, PC, of Charleston, for Appellant.

Daniel K. Felker, of Hucks & Felker, LLC, of Columbia, for Respondent.

———————

**PER CURIAM:** In this domestic relations matter, Ivery M. Chestnut (Husband) appeals the family court's final divorce decree, arguing the family court erred in (1) awarding Mashell Chestnut (Wife) $750 per month in permanent periodic alimony, (2) finding Husband's premarital personal property was transmuted into marital

property, (3) awarding Wife one-half of the equity in the marital home, and (4) awarding Wife $4,015.72 for attorney's fees.  We affirm.

## I.      Alimony

Husband argues the family court erred in awarding Wife $750 per month in permanent periodic alimony.  We disagree.

"Permanent[] periodic alimony is a substitute for support [that] is normally incidental to the marital relationship."  *Butler v. Butler*, 385 S.C. 328, 336, 684 S.E.2d 191, 195 (Ct. App. 2009).  "Alimony should ordinarily place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage."  *Hinson v. Hinson*, 341 S.C. 574, 577, 535 S.E.2d 143, 144 (Ct. App. 2000).  The family court has a duty to formulate an alimony award that is "fit, equitable, and just if the claim is well[-]founded."  *Allen v. Allen*, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001).

In making an alimony award, the family court must consider the following statutory factors: (1) the duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and non-marital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; (12) prior support obligations; and (13) any other factors the court considers relevant.  S.C. Code Ann. § 20-3-130(C) (2014).

We find the family court did not err in awarding Wife $750 per month in permanent periodic alimony.  *See Stoney v. Stoney*, 422 S.C. 593, 594, 813 S.E.2d 486, 487 (2018) ("[T]he proper standard of review in family court matters is de novo[.]"); *Id.* at 595, 813 S.E.2d at 487 ("[D]e novo review allows an appellate court to make its own findings of fact[.]").  At the time of trial, Husband was forty-nine years old and Wife was forty-eight years old; and the parties were married for a period of ten years.  *See* § 20-3-130(C)(1).  No children were born out of the marriage, but each had three children of their own from previous relationships.  *See* § 20-3-130(C)(9).  The parties maintained a comfortable standard of living primarily based on Husband's income.  *See* § 20-3-130(C)(5).  Husband's and Wife's financial declarations listed the incomes and expenses for each party.  Husband's financial declaration indicated his income was $8,961 per month, which included his full-time salary and retirement benefits.  Wife's income was $1,580 per month, which included wages from her part-time job as a bus driver and $250.00 in temporary spousal

support. *See* § 20-3-130(C)(6). Husband had monthly expenses totaling $6,737, and Wife had monthly expenses totaling $2,176. *See* § 20-3-130(C)(7).

The family court found that even if Wife's income was doubled, it would leave a great disparity in income between the parties. The family court noted that while Husband's income had increased during the marriage, Wife's income remained the same. This trend was due to the fact that Wife's part-time employment permitted her to have a flexible schedule that was convenient for both parties' personal and child care needs, as opposed to Husband's work schedule. The family court acknowledged that Wife's income would not afford her the same standard of living the parties were accustomed to during the marriage because "her expenses to maintain a separate household [took] on a greater proportion of her income." The family court awarded Wife fifty percent of the marital personal property, which the parties stipulated was valued at $5,600. *See* § 20-3-130(C)(8). The family court granted the divorce on the ground of one year continuous separation, attributing no fault to either party, and ordered that the award of alimony would be deductible to Husband and taxable to Wife. *See* § 20-3-130(C)(10), (11). Thus, upon our review of both parties' financial declarations, monthly expenses, net monthly incomes, non-marital property, and the statutory factors, we find that Wife has a need for alimony and her alimony award is reasonable under the circumstances. *See Stoney,* 422 S.C. at 595, 813 S.E.2d at 487 ("[D]e novo review allows an appellate court to make its own findings of fact[.]"); *see also McElveen v. McElveen*, 332 S.C. 583, 599–600, 506 S.E.2d 1, 9 (Ct. App. 1998) (considering the wife's financial declaration and monthly expenses in determining if the family court's alimony award was reasonable under the circumstances of the case), *disapproved of on other grounds by Wooten v. Wooten*, 364 S.C. 532, 615 S.E.2d 98 (2005).

Husband contends the family court failed to consider the financial obligations arising from his son's college expenses and his other son's special needs. Additionally, Husband maintains that the family court did not give proper weight to "the employment history and earning potential of each spouse" and "the current and reasonably anticipated earnings of both spouses." We disagree.

Husband listed the following in his financial declaration: "Work Related Day Care," $400; "Children's incidental expenses," $300.00; "School lunches, supplies, field trips, and fees," $ 400.00; and "College for Son," $500. One of the factors that the family court must consider when determining an alimony award includes "the overall financial situation of the parties, especially the ability of the supporting spouse to pay." *Patel v. Patel*, 359 S.C. 515, 529, 599 S.E.2d 114, 121 (2004) ("Three important factors in awarding periodic alimony are (1) the duration of the marriage; (2) the overall financial situation of the parties, especially the ability of

the supporting spouse to pay; and (3) whether either spouse was more at fault than the other."). As such, the family court had to consider Husband's income and expenses listed in his financial declaration to determine his overall financial position. Nonetheless, after reviewing Husband's monthly expenses, which include expenses for his son enrolled in college and disabled son, we find Husband has the ability to pay, and the family court properly considered the parties' employment histories, earning potential, and reasonably anticipated earnings. *See Stoney,* 422 S.C. at 595, 813 S.E.2d at 487 ("[D]e novo review allows an appellate court to make its own findings of fact[.]"); *Lewis v. Lewis*, 392 S.C. 381, 384, 709 S.E.2d 650, 651 (holding the appellate court may find facts in accordance with its own view of the preponderance of the evidence).

Furthermore, there are additional factors that weigh in favor of awarding Wife alimony. *See Allen, 347 S.C. at 184, 554 S.E.2d at 452* (providing that in making an alimony award "[n]o one factor is dispositive"); *see also* § 20-3-130(C)(13) (providing the court should consider other factors that it finds relevant in making an award of alimony). The parties were married for a period of ten years and during the course of the marriage, Wife was a homemaker and caretaker of the parties' respective children. Wife is currently employed in the same field of work as she was during the course of the marriage, and her income is substantially lower than that of Husband. Although Husband was the primary wage earner, Wife contributed ninety percent of her income towards the family's expenses. Therefore, because the family court analyzed the relevant statutory factors in determining its award, a review of the record supports the findings of fact, and there is a vast income disparity between Husband and Wife, we find the family court did not err in awarding Wife $750 per month in alimony and the award is "fit, equitable, and just." *See Allen*, 347 S.C. at 184, 554 S.E.2d at 424; *Bodkin v. Bodkin*, 388 S.C. 203, 216–17, 694 S.E.2d 230, 237–38 (Ct. App. 2010) (finding award of alimony proper where husband was primary wage earner and responsible for payment of majority of the marital bills, wife was primary caretaker of parties' child and husband's children, and husband had greater earning potential); *Patel*, 359 S.C. at 529–30, 599 S.E.2d at 121–22 (finding award of alimony proper when husband was financially able to pay alimony award and was highly educated and wife had a high school education and had been out of work for more than 20 years); *Ricigliano v. Ricigliano*, 413 S.C. 319, 333, 775 S.E.2d 701, 709 (Ct. App. 2015) (finding husband was entitled to permanent periodic alimony when husband's income was substantially lower than wife's income, husband was living well below standard of living that he enjoyed during the marriage, and wife was more educated than husband and maintained steady employment, while husband's income fluctuated); *See also Stoney,* 422 S.C. at 595,

813 S.E.2d at 487 ("[D]e novo review allows an appellate court to make its own findings of fact[.]").

## II. Transmutation of Personal Property

Husband contends that the family court erred in finding premarital personal property had been transmuted into marital property. Specifically, Husband argues that Wife's mere use of the personal property is insufficient to support a finding of transmutation. He claims the property is traceable and there was no intent to make the property marital. We disagree.

Marital property is "all real and personal property [that] has been acquired by the parties during the marriage and [that] is owned as of the date of filing or commencement of marital litigation . . . regardless of how legal title is held." S.C. Code Ann. § 20-3-630(A) (2014). "Equitable distribution of marital property 'is based on the recognition that marriage is, among other things, an economic partnership.'" *Crossland v. Crossland*, 408 S.C. 443, 456, 759 S.E.2d 419, 426 (2014) (quoting *Morris v. Morris*, 335 S.C. 525, 531, 517 S.E.2d 720, 723 (Ct. App. 1999)). Moreover, "[u]pon dissolution of the marriage, marital property should be divided and distributed in a manner [that] fairly reflects each spouse's contribution to its acquisition, regardless of who holds legal title." *Id.* (quoting *Morris*, 335 S.C. at 531, 517 S.E.2d at 723).

Non-marital property may be transmuted into marital property if "[1] it becomes so commingled with marital property that it is no longer traceable, [2] is titled jointly, or [3] is used by the parties in support of the marriage or in some other way that establishes the parties' intent to make it marital property." *Wilburn v. Wilburn*, 403 S.C. 372, 384, 743 S.E.2d 734, 740 (2013). "Transmutation is a matter of intent to be gleaned from the facts of each case. The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage." *Jenkins v. Jenkins*, 345 S.C. 88, 98, 545 S.E.2d 531, 537 (Ct. App. 2001). Evidence of transmutation "may include placing the property in joint names, transferring the property to the other spouse as a gift, using the property exclusively for marital purposes, commingling the property with marital property, using marital funds to build equity in the property, or exchanging the property for marital property." *Johnson v. Johnson,* 296 S.C. 289, 295, 372 S.E.2d 107, 111 (Ct. App. 1988). "The mere use of separate property to support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation." *Id.* at 295–96, 372 S.E.2d at 111.

In the present case, the parties stipulated that the value of the real and personal property was as indicated on Husband's bankruptcy schedules, which were introduced into evidence. The personal household property was valued at $5,600. Husband disputes only $4,400 of the property that includes the living room, dining room, and bedroom furniture. Husband maintains this furniture was purchased prior to the marriage. A review of the record reveals there is conflicting testimony regarding the furniture at issue. Initially, Husband testified that most of the items inside of the home were destroyed during the fire, but he did not specify the items that survived. According to Husband, the pieces of furniture destroyed in the fire were items he owned prior to meeting Wife. In contradictory testimony, Husband stated the furniture that was in the house at the time of trial was furniture the parties had acquired during the course of the marriage.

Wife testified that when she moved into Husband's rented house she brought furniture along with her. Wife acknowledged that Husband had "a house full of furniture" when she moved in, but she provided either a twin or bunk bed for her children to use. When the combined family moved into the house Husband purchased, both parties took part in looking for and selecting new furniture for the home. According to Wife, the furniture that was destroyed in the fire was the new furniture that both she and Husband took part in selecting. Wife agreed that only a few items survived the fire, but she did not specify which items.

As previously stated, it is undisputed that Husband used his insurance proceeds to replace all of the furniture that was destroyed in the fire. However, it is unclear when each item was replaced. Wife stated the family moved into the rebuilt house thirty days prior to the actual marriage. She agreed that all of the items that were destroyed in the fire were replaced. However, as the family court indicated, there is no testimony in the record specifying *when* the items were replaced, i.e., while the house was being rebuilt, during the thirty-day window prior to the marriage, or after the marriage. Thus, we find the household property was so commingled that it transmuted into marital property. *See Wilburn*, 403 S.C. at 384, 743 S.E.2d at 740 (providing non-marital property can transmute into marital property if it becomes so commingled with marital property that it is no longer traceable). Furthermore, the household furnishings were purchased and used to support the combined family of eight. We find a preponderance of the evidence shows the parties treated the household furnishings in such a manner during the marriage as to indicate their intent to make it marital property. *See Johnson*, 296 S.C. at 295, 372 S.E.2d at 111 (providing that using the property exclusively for marital purposes is evidence that the parties regard the property as common property); *see also Lewis*, 392 S.C. at 392, 709 S.E.2d at 655 ("Consequently, the

family court's factual findings will be affirmed unless appellant satisfies this court that the preponderance of the evidence is against the finding of the family court.") (internal quotation marks omitted); *Stoney*, 422 S.C. at 595, 813 S.E.2d at 487 ("[A]n appellant has the burden of showing the appellate court that the preponderance of the evidence is against the finding of the trial judge."). Furthermore, due to the conflicting testimony regarding the acquisition of the furniture, we defer to the credibility determination of the family court as it was in a superior position to observe the parties and their demeanor. *See McComb v. Conard*, 394 S.C. 416, 422, 715 S.E.2d 662, 664–65 (Ct. App. 2011) ("The appellate court generally defers to the findings of the family court regarding credibility because the family court is in a better position to observe the witness and his or her demeanor.").

### III.   Equity in Marital Home

#### A. Transmutation

First, Husband contends there was insufficient evidence to support a finding of transmutation of his premarital home. Specifically, Husband argues the family court committed an error of law by relying on Wife's premarital contributions to support a finding of transmutation. Husband cites *Pittman v. Pittman*, 407 S.C. 141, 151, 754 S.E.2d 501, 506 (2014), in support of this proposition.

In *Pittman*, our supreme court noted that it was an error of law for the family court to rely on Wife's premarital contributions to Husband's business in support of a finding of transmutation. *Id*. The *Pittman* court reiterated that a finding of transmutation must have occurred after the date of the common law marriage. *Id*. Nonetheless, the court affirmed the family court's transmutation finding, noting the record revealed ample evidence to support a finding that the parties' actions *during the marriage* manifested an intent for the business to be transmuted. *Id*.

Here, we acknowledge that the family court relied on contributions Wife made during the engagement period, thus prior to the actual marriage. Specifically, the family court took into consideration that the parties combined their families and became a household of eight living in a three-bedroom home; both parties searched for a bigger home to accommodate the combined family; and Wife was instrumental in reworking the floor plan to add an additional bedroom when the house was rebuilt after the fire.

However, there is other evidence in the record that demonstrates the parties regarded the residence as the common property of the marriage. *See Nasser-Moghaddassi v. Moghaddassi*, 364 S.C. 182, 190, 612 S.E.2d 707, 711 (Ct. App.

2005) ("Our broad scope of review does not relieve appellant of [his] burden to convince [the] [appellate] [c]ourt [that] the family court committed error."); *see also Johnson*, 296 S.C. at 295, 372 S.E.2d at 110 ("As a general rule, transmutation is a matter of intent to be gleaned from the facts of each case."). Wife testified that a large portion of her income was given to Husband to contribute to the family's household expenses. *See Hamiter v. Hamiter*, 290 S.C. 508, 510, 351 S.E.2d 581, 582 (Ct. App. 1986) (providing funds derived from salary earned during the marriage are marital property). Wife stated one of those expenses included the mortgage for the residence at issue. Thus, Wife's marital funds were used to build equity in the home. *See Taylor-Cracraft v. Cracraft*, 417 S.C. 570, 576, 790 S.E.2d 423, 426 (Ct. App. 2016) (providing that using marital funds to build equity in the property is evidence that the parties regarded the property as common property). Additionally, Wife testified, and Husband agreed on cross-examination, that during the marriage the house was referred to as "our home." In fact, Husband agreed that the term, "our home," included Wife. *See id.* (providing that using the property exclusively for marital purposes is evidence that the parties regarded the property as common property). Therefore, we affirm the family court's finding of transmutation.

## B. Equitable Distribution

Next, Husband maintains the family court erred in awarding Wife fifty percent of the equity in the marital home. Husband contends the family court failed to consider his premarital contribution. We disagree.

In making an equitable apportionment of marital property, the family court must give weight in such proportion as it finds appropriate to the following factors: (1) the duration of the marriage; (2) marital fault; (3) the value of the marital property and the contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value, including contributions as a homemaker; (4) the income and earning potential of the parties and the opportunity for future acquisition of capital assets; (5) the parties' health; (6) additional training or education needed; (7) the parties' non-marital property; (8) the existence or non-existence of vested retirement benefits; (9) the award of alimony; (10) the desirability of awarding the family home; (11) tax consequences; (12) prior support obligations; (13) liens and any other encumbrances upon the marital property; (14) child custody arrangements and obligations; and (15) any other factors the court considers relevant. S.C. Code Ann. § 20-3-620(B) (2014). These criteria are intended to guide the family court in exercising its discretion over apportionment of marital property. *Johnson*, 296 S.C. at 297, 372 S.E.2d at 112. "The ultimate goal of [equitable] apportionment is to divide the marital estate, as a whole, in a manner that fairly reflects each spouse's contribution to the economic partnership and also the effect on each of the parties of

ending that partnership." *King v. King*, 384 S.C. 134, 143, 681 S.E.2d 609, 614 (Ct. App. 2009).

As previously stated, the record reveals the parties were married for a period of ten years, and upon Husband's demand, the parties separated in June of 2013. *See* § 20-3-620(B)(1), (2). Husband earned a majority of the parties' income throughout the marriage, worked longer hours than Wife, and received retirement payments along with his full-time salary. *See* § 20-3-620(B)(4), (8). Husband's earning potential is much greater than Wife's, and while Husband's income increased throughout the marriage, Wife's income remained substantially the same. *See* § 20-3-620(B)(4). Wife worked part-time as a bus driver throughout the marriage, and her flexible schedule was convenient for the family's child care needs. *See* § 20-3-620(B)(3). Husband discouraged Wife from accepting employment opportunities that would have increased her income. Nonetheless, Wife provided Husband with 90% of her income to contribute towards the family's household expenses— including household bills, the mortgage, and furniture. *See* § 20-3-620(B)(3). Wife used the remainder of her income to purchase gas to transport the parties' children to and from school, groceries for the entire family, and anything else the children needed.

We acknowledge that Husband obtained a VA loan to purchase the home during the engagement period, thus prior to the marriage. *See* § 20-3-620(B)(3). However, contributions to the acquisition, preservation, and appreciation of the home are not limited to monetary value. Once Husband and Wife married, the combined family of eight lived in the home for a period of ten years, during which Wife performed homemaker duties contributing to the upkeep of the home. *See Doe v. Doe,* 370 S.C. 206, 215, 634 S.E.2d 51, 56 (Ct. App. 2006) (noting it would be unfair to the spouse who undertook household duties for the family court to apportion the marital estate solely based on the parties' direct financial contributions); *see also Walker v. Walker*, 295 S.C. 286, 288, 368 S.E.2d 89, 90 (Ct. App. 1988) ("Equitable distribution is based on a recognition that marriage is, among other things, an economic partnership."). Wife was also a caretaker of the six children in the household. Specifically, Wife was instrumental in caring for Husband's disabled son: she visited his school during her lunch break if he had problems, participated in his educational development, showered and changed him at school if he soiled himself, handled all of his paperwork and attended special needs meetings. Additionally, as the family court noted, Husband refused to allow Wife to take anything from the home and refused to allow Wife to use one of the three vehicles at the residence once the parties separated, proclaiming that all the items belonged to him. *See* § 20-3-620 (B)(15) (allowing the court to give weight

in such proportions as it finds appropriate to any other relevant factors enumerated in the family court's order).

Furthermore, the total net value of the disputed property, including personal and real, owned by the parties at divorce was $56,926. Husband has an earning capacity and income of over $100,000 a year, and he received marital assets totaling $28,463. Wife has an earning capacity and income of $18,960 a year, she received $23,465 in marital assets, and she was awarded $750 per month in permanent periodic alimony. *See* § 20-3-620(B)(9). Based on our view of the preponderance of the evidence, we find the fifty percent division of the martial residence is fair and equitable. *See Stoney,* 422 S.C. at 595, 813 S.E.2d at 487 ("[D]e novo review allows an appellate court to make its own findings of fact[.]"); *King*, 384 S.C. at 143, 681 S.E.2d at 614 ("The ultimate goal of [equitable] apportionment is to divide the martial estate, as a whole, in a manner that fairly reflects each spouse's contribution to the economic partnership and also the effect on each of the parties of ending that partnership."); *Johnson*, 296 S.C. at 298–300, 372 S.E.2d at 112–13 (affirming a 50/50 division of the marital estate although the parties were married for one year and most of the appreciation in the value of the parties' assets was attributable to Husband's earnings and income because there were important equities weighing in favor of Wife, such as the contribution of Husband's wages to the appreciation in value of his non-marital property, Wife's contribution to the improvement of the non-marital property, and Wife's role as a homemaker); *see id*. at 299, 372 S.E.2d at 113 ("How the individual factor[s] [are] weigh[ed] depend[s] on the facts of each case."). Therefore, we affirm the family court's apportionment of the marital home.

## IV.   Attorney's Fees

Husband argues Wife's attorney fee award should be reversed if this court reverses the family court's decision. Because we affirm the rulings of the family court, we also affirm the award of attorney's fees to Wife. *See Rogers v. Rogers*, 343 S.C. 329, 334, 540 S.E.2d 840, 842 (2001) ("[S]ince the beneficial result obtained by counsel is a factor in awarding attorney's fees, when that result is reversed on appeal, the attorney's fee award must also be reconsidered.").


**AFFIRMED.**[1]

**LOCKEMY, C.J., and THOMAS and GEATHERS, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.